**PARKE COUNTY, Indiana,
Defendant–Appellant,**

v.

**ROPAK, INC., Plaintiff–Appellee.**

**No. 28A01–8711–CV–273.**

Court of Appeals of Indiana,
First District.

Aug. 2, 1988.

Rehearing Denied Sept. 19, 1988.

Sydney L. Steele, Richard S. Pitts, Lowe Gray Steele & Hoffman, Donald C. Duck, Indianapolis, John R. Kenley, Rockville, for defendant-appellant.

Stephen L. Trueblood, Landyn K. Harmon, Trueblood Harmon Carter & Cook, Terre Haute, for plaintiff-appellee.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Defendant County appeals judgment and award of $150,000.00 damages in favor of plaintiff corporation which filed suit against the county under the Indiana Tort Claims Act[1] (ITCA). We affirm.

## FACTS

Ropak, Inc., a meat processing business, was formed on January 13, 1977, by Gary and Anne Cooper. Ropak was unable to make a profit operating as a custom butchering service for the general public, so the Coopers changed the focus of their business to wholesale butchering for a commercial market. Gross sales increased during the years 1979–81, and Ropak cultivated a

---

1. Indiana Code section 34–4–16.5–1 *et seq.*

profitable business relationship with Crest Mark Packing Co., a large meat packing company.

In the summer of 1980, complaints about run-off and smell from Ropak's operation prompted Dwight Milligan, the Parke County Sanitarian, to contact Cooper about the problem. Milligan informed Cooper that Ropak's waste water disposal system was not functioning properly. During July and August of 1980, Cooper and Milligan met at least twice to discuss the problem, and Milligan advised Cooper that the septic problem could be solved in either one (1) of two (2) ways. Cooper could either hook into the municipal sewer system or construct a holding pond or lagoon. Milligan contacted Cooper in September 1980, and informed him that the City of Rockville had refused permission for a sewer hook-up. Milligan further stated that Cooper would have to build a lagoon or be shut down.

On September 24, 1980, Milligan issued Ropak a permit to begin building the lagoon. Milligan checked on the progress of the lagoon construction nearly every day. On February 18, 1981, a representative of the State Board of Health inspected the lagoon. The inspection revealed that the State had given no prior approval for the project, and no SPC–15 permit had been issued as was required by state law and Stream Pollution Control Board regulations. On February 19, Milligan notified Cooper by letter that the Parke County regulations had been satisfied, inspection by the State Board of Health had been completed, and Milligan had discussed the project with the State Board and found that everything was all right. Ropak began using the lagoon.

On or about May 11, 1981, Joseph Snyder of the State Board of Health notified Cooper that Ropak's waste disposal problem had been referred to the Attorney General's office for enforcement because Cooper had failed to comply with state law. The State Board denied Cooper's request for an SPC–15 permit. Cooper contacted Milligan, and Milligan stated again that he had discussed the issue with Joseph Snyder, that there was going to be no problem with the lagoon, and that Cooper should not worry about it. Snyder subsequently testified that he had never spoken with Milligan about the lagoon. Shortly after receiving the May 11 letter, Ropak was sued by the Stream Pollution Control Board which was seeking to enjoin use of the lagoon. Ropak hired an engineering consulting firm to work on correcting the lagoon problem, but Ropak's business operated at a loss and eventually closed. By letter dated October 20, 1981, Ropak notified the Parke County Board of Commissioners and the Attorney General of its claim against Parke County.

The Coopers filed a complaint for damages against Parke County and the State Board of Health on April 22, 1983. On August 18, 1983, the trial court granted summary judgment in favor of the State Board of Health finding that the plaintiffs' action against the State was barred for failure to comply with the notice requirements of the ITCA. Discovery ensued between the remaining parties, and Ropak, Inc. was substituted for the Coopers as plaintiff. Parke County filed a motion for summary judgment which was denied. A jury trial was held in May, 1987, and at the close of the plaintiff's case, Parke County moved for judgment on the evidence. The court granted the motion as to plaintiff's claim under 42 U.S.C. § 1983 and the negligence claim, but allowed the fraud claim to go to the jury. The jury returned a verdict of $150,000.00 in favor of Ropak, and the court entered judgment upon the verdict. Parke County brings this appeal.

## ISSUES

1. Was the plaintiff's claim of fraud based upon misrepresentations of fact or law?

2. Did the plaintiff comply with the notice requirements of the ITCA?

3. Did the trial court properly conclude that Parke County was not immune from liability under the ITCA?

4. Does the evidence support the findings of intentional misrepresentation and reasonable reliance?

5. Was the damage award adequately supported by the evidence?

6. Did the trial court properly exclude defendant's exhibit "I", a letter from plaintiff's counsel which allegedly showed plaintiff's reliance on someone other than the Parke County Sanitarian?

7. Did the trial court properly admit plaintiff's financial statements into evidence?

8. Did the trial court err in refusing defendant's tendered instructions numbered one (1), five (5), six (6), and eight (8), and in modifying defendant's instruction number seven (7)?

9. Did the trial court properly give instructions numbered four (4) and eleven (11)?

## DISCUSSION AND DECISION

### Issue One

The appellant contends first that any misrepresentation made by Dwight Milligan was one of law rather than fact, and therefore not actionable under a fraud theory. The appellant notes correctly that in order to sustain an action for fraud, it must be proven by a preponderance of the evidence that a material misrepresentation of a past or existing fact was made which was untrue and known to be untrue by the person making it, or else recklessly made, and that another party in fact relied on the misrepresentation and was induced thereby to act to his detriment. *Plymale v. Upright* (1981), Ind.App., 419 N.E.2d 756, 760. Parke County contends that Milligan's only misrepresentation concerned the need for a state permit, and because this was a legal issue rather than a factual issue, the fraud allegation must fail. In addition, Parke County argues that because all persons are charged with knowledge of the rights and remedies prescribed by statute, *Middleton Motors, Inc. v. Indiana Dept. of State Revenue* (1978), 269 Ind. 282, 285, 380 N.E.2d 79, 81, Ropak should have known about the state permit requirement and not relied on Milligan's statements.

■ Contrary to appellant's assertions, the record does contain evidence that Milli-

gan's misrepresentations included factual misstatements as well as erroneous statements of law regarding the state permit. Cooper testified that he contacted Milligan after receiving a letter from Joseph Snyder of the State Board of Health advising him that Ropak's violations were being referred to the Attorney General for enforcement action. According to Cooper, Milligan stated that he had talked to Snyder, and that "everything was O.K. with the lagoon, there was no problem, don't worry about it." Record at 958. Cooper also testified that when he asked whether "any other paper" was necessary for approving the lagoon, Milligan never mentioned the State Board of Health. Furthermore, Milligan advised that the State Board of Health knew about the lagoon situation and that Milligan was "handling it". Record at 961–62. Cooper testified that he did not go over Milligan's head to contact the State Board on his own because Milligan had threatened to shut him down unless he complied with Milligan's instructions. At trial, Joseph Snyder testified that he had never spoken with Milligan about Ropak's lagoon.

Where the evidence conflicts, whether certain statements actually were made as asserted is a question of fact for the jury. *Plymale*, at 760. Whether plaintiffs acted in reliance on a defendant's representation and whether plaintiffs were justified in so doing are, likewise, factual questions for a jury. *Id.* However, where the alleged statements cannot be construed as anything but an expression of opinion or belief or a representation of law, the court may properly make such a finding and take the case from the jury. *Id.* at 760–61. The record contains evidence that Milligan told Cooper he had spoken to Joseph Snyder about Ropak and that Milligan would be handling the lagoon problem. Snyder testified that he had never spoken to Milligan. Milligan's statements about his contact with the State Board clearly were factual in nature and not limited to expressions of opinion and representations of law.

■ Parke County claims also that Cooper had no right to rely on Milligan's state-

ments because neither Parke County nor Milligan had a fiduciary relationship to Cooper. The appellant is correct that a party seeking to prove fraud must establish a right to rely. *Plymale*, at 761. However, we find no authority for the position that the right to rely must be based on a fiduciary relationship. A person has a right to rely upon representations where the exercise of reasonable prudence does not dictate otherwise. *Plymale*, at 762, quoting *Soft Water Utilities, Inc. v. LeFevre* (1974), 159 Ind.App. 529, 308 N.E.2d 395. Whether reliance was justified is, on conflicting evidence, a matter for a jury to determine. *Plymale*, at 763. Cooper claims that Milligan's misrepresentations about the State's involvement deceived him into believing that State permission to build a lagoon had been given. Furthermore, Joseph Snyder testified that the State Board often used County Sanitarians to help make contacts, and an administrative regulation in effect in 1980 and 1981 authorized the State Board to use County Sanitarians as agents. 330 Ind.Admin.Code 3–2–1–2. Ropak's claim was premised on an actionable factual misrepresentation, and the record contains sufficient evidence to support the jury's conclusion that Cooper had a right to rely on Milligan's statements.

*Issue Two*

■ Parke County next contends that Ropak's notice was not timely under the ITCA. Indiana Code section 34–4–16.5–7 as applicable in 1980 and 1981 provided that "a claim against a political subdivision is barred unless notice is filed with the governing body of that political subdivision within one hundred eighty (180) days after the loss occurs." [2] Although the notice requirement is phrased in mandatory language, we have held that substantial compliance with the notice provision will suffice when the purpose of the Act has been satisfied. *Board of Aviation Comm'rs v. Hestor* (1985), Ind.App., 473 N.E.2d 151, 154. However, actual knowledge or routine investigation by the political subdivision will not relieve a claimant of the duty to give notice. *Id.*

Parke County and Ropak agree that Ropak provided notice to the political subdivision, Parke County, by letter dated October 20, 1981. The parties disagree, however, regarding the date which triggered Ropak's duty to notify under the statute. Parke County contends that Ropak's cause of action accrued at the time construction of the lagoon began (Sept. 24, 1980) or at the latest when the lagoon was completed and put to use (Feb. 19, 1981). Ropak argues that its loss did not occur until the State of Indiana took steps in May of 1981 to enjoin Ropak's use of the lagoon. In overruling Parke County's Motion to Dismiss, the trial court found that the plaintiff's cause of action accrued on May 11, 1981, and that notice under the ITCA was timely. We agree. The statute provides for notice within one hundred eighty (180) days after the loss occurs. Ropak did not suffer a loss until the State Board of Health sought to enjoin use of the lagoon. Ropak first learned of the Attorney General's involvement from the State Board's letter dated May 11, 1981. The notification letter dated October 20, 1981, clearly fell within the one hundred eighty (180) day statutory notice period. We see no error in the trial court's ruling on this point.

*Issue Three*

■ Parke County next argues that it is immune from liability under Ind.Code

---

2. Ind.Code § 34–4–16.5–7 was amended in 1986 and now reads as follows:
"(a) Except as provided in section 8 of this chapter, a claim against a political subdivision is barred unless notice is filed with:
(1) the governing body of that political subdivision; and
(2) the Indiana political subdivision risk management commission created under IC 27–1–29;

within one hundred eighty (180) days after the loss occurs.
"(b) A claim against a political subdivision is not barred for failure to file notice with the Indiana political subdivision risk management commission created under IC 27–1–29–5 if the political subdivision was not a member of the political subdivision risk management fund established under IC 27–1–29–10 at the time the act or omission took place."

§ 34–4–16.5–3. The statute provides in pertinent part:

"A governmental entity or an employee acting within the scope of his employment is not liable if a loss results from: ...

(6) the performance of a discretionary function;

(7) the adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment; ...

(10) the issuance, denial, suspension, or revocation of, or failure or refusal to issue, deny, suspend, or revoke, any permit, license, certificate, approval, order, or similar authorization, where the authority is discretionary under the law;

(11) failure to make an inspection, or making an inadequate or negligent inspection, or any property, other than the property of a governmental entity, to determine whether the property complied with or violates any law or contains a hazard to health or safety; ...

(13) misrepresentation if unintentional."

Its theory is that if Milligan's conduct did not fall within one of the statutorily immune categories, then Milligan was acting outside the scope of his employment, and Parke County cannot be liable. We disagree with the appellant's interpretation of the ITCA. We do not presume that our legislature intended statutory language to be applied in an illogical manner, nor do we presume the legislature intended to enact a statute with useless provisions, the effect of which can easily be avoided. *State ex rel. Hatcher v. Lake Superior Court* (1986), Ind., 500 N.E.2d 737, 739. We do not believe the legislature intended by the language of subsection (13) to *grant* immunity for *intentional* misrepresentation so long as the factual setting of the misrepresentation fits within another subsection of the statute. Rather, subsection (13) provides that a government entity will be immune from liability for misrepresentation only where the misrepresentation was unintentional; conversely, no immunity will ap-

ply to any intentional misrepresentation, regardless of the factual setting. We have held that a plaintiff cannot escape the immunity provisions of the ITCA merely by characterizing his action as something it is not. *State Dept. of Natural Resources v. Taylor* (1981), Ind.App., 419 N.E.2d 819, 823, *trans. denied.* Likewise, a defendant cannot shield himself from liability under the ITCA by characterizing his action as something it is not. The nature of Ropak's action was fraud and intentional misrepresentation. We decline Parke County's invitation to ignore the intentional misrepresentation and focus instead on inapplicable subsections of the statute. Because the nature of the action is intentional misrepresentation and we hold that the ITCA does not provide immunity for such conduct under any circumstances, we do not discuss whether Milligan's conduct was discretionary, constituted law enforcement, or involved the issuance of a permit or the making of an inspection.

*Issue Four*

■ Parke County next challenges the sufficiency of the evidence for intentional misrepresentation and reasonable reliance. Our standard of review on such challenges is well established. We view the evidence in a light most favorable to the verdict and consider all reasonable inferences to be drawn therefrom. *Gash v. Kohm* (1985), Ind.App., 476 N.E.2d 910, 914, *trans. denied.* We neither reweigh the evidence or evaluate the credibility of witnesses. *Id.* If the record contains substantial evidence of probative value concerning each element of the claim, we will not disturb the judgment. *Id.*

As we concluded in our discussion of issue one, Milligan's statements concerning his alleged conversations with Joseph Snyder of the State Board of Health constitute actionable, factual misrepresentations and not merely misstatements of law. Parke County claims that nothing in the record indicates that Milligan knew his statements were false or that he made the statements with reckless disregard of their truth or falsity. We disagree. Although Milligan claimed that he never lied to Cooper, the

jury was not required to believe Milligan's testimony. Cooper testified that Milligan told him that he had talked to Snyder at the State Board of Health and that there was no problem with the lagoon. Snyder, however, testified that he had never discussed Ropak's lagoon problems with Milligan. From this testimony the jury could well infer that Milligan made false statements to Cooper and that Milligan knew the statements were false when he made them. Whether the plaintiff's reliance on those statements was justified, and whether the plaintiff acted in reliance upon the misrepresentation are questions of fact for the jury. *Plymale,* at 760. We concluded in our discussion of issue one that Cooper did have a right to rely on Milligan's statements, and we now hold also that there was sufficient evidence for the jury to find that Cooper in fact acted in reliance on Milligan's statements when he built the lagoon.

*Issue Five*

Parke County argues that the $150,-000.00 damage award is not supported by the evidence. A challenge to a damage award confronts a stringent standard of review on appeal. We neither reweigh the evidence or assess the credibility of witnesses. *Davis v. Eagle Products, Inc.* (1986), Ind.App., 501 N.E.2d 1099, 1108, *trans. denied.* A damage award will be disturbed only when the evidence is without conflict, leads to but one conclusion, and that conclusion is contrary to the one reached by the trial court. *Id.* Furthermore, we presume that the award rests upon those allegations which were sustained by the evidence. *Id.* In general, no particular degree of mathematical certainty is required so long as the amount awarded is supported by evidence in the record. *Whiteco Properties, Inc. v. Thielbar* (1984), Ind.App., 467 N.E.2d 433, 438, *trans. denied.* However, an award may not be based on mere conjecture, speculation, or guesswork. *Id.*

■ In an action for fraud, the injured party is entitled to compensation for damage suffered as a result of the fraudulent representation. *Captain and Co., Inc. v.*

*Stenberg* (1987), Ind.App., 505 N.E.2d 88, 98, *trans. denied.* As a general rule, the measure of damages for fraud is the actual pecuniary loss sustained. 37 Am.Jur.2d, *Fraud and Deceit,* § 342 (1968). Thus, one who suffers injury by the commission of fraud is entitled to recover such damages as will compensate him for the loss or injury actually sustained and place him in the position he would have occupied had he not been defrauded. *Id.* Where property is injured as a result of fraud, the measure of damages is the difference between the value of the property before the wrong and the value thereafter. *Id.* In the case of tortious injury to property, where the injury is permanent, the measure of damages is the value of the property before the injury; however, where the injury is nonpermanent, the measure of damages is the cost of restoration. *Sanborn Elec. Co. v. Bloomington Athletic Club* (1982), Ind. App., 433 N.E.2d 81, 88.

Joel Helper, the former executive vice president of Crest Mark Packing Co., testified that in the early months of 1981, he met with Cooper to discuss purchasing a portion of Ropak, Inc. Crest Mark first offered to pay $100,000.00 for forty-nine percent (49%) of Ropak, and later increased the offer to $150,000.00. Cooper did not accept the offer, and in November of 1981, Crest Mark notified Cooper by letter that it was "ceas[ing] operation at Ropak." Record at 903. Helper testified that Crest Mark changed its position in regard to acquiring an interest in Ropak because of Ropak's waste disposal difficulties.

In order to determine the value of Ropak before the fraud, the jury was entitled to consider the amount a purchaser was willing to pay for a portion of the business when it was operating at its peak. The price voluntarily paid by a purchaser is admissible as evidence of the property's market value. *Indiana Tri–City Plaza Bowl, Inc. v. Estate of Glueck* (1981), Ind. App., 422 N.E.2d 670, 679, *trans. denied.* Although Cooper did not accept the offer to purchase, the amount of the offer constitutes probative evidence of the value of the business at the time the offer was made.

The record contains ample evidence that Ropak's business declined dramatically during the summer and fall of 1981 when it could no longer use the lagoon, and the jury could reasonably infer that the business had little or no value at that time.

Parke County notes correctly that a plaintiff has a duty to mitigate damages. *Aamco Transmission v. Air Systems, Inc.* (1984), Ind.App., 459 N.E.2d 1215, 1218, *trans. denied.* However, we cannot agree with Parke County's suggestion that Ropak should have continued operations to mitigate damages after being notified by the State Board of Health that it was operating without a necessary state permit and that the Attorney General had been alerted to the situation. We cannot say that the evidence regarding damages was without conflict and led solely to a conclusion contrary to that reached by the trial court. Furthermore, the award does not appear to be based upon mere conjecture. Because the damage award is within the evidence, we will not disturb it.

*Issue Six*

Parke County's next assertion of error concerns the trial court's exclusion of certain evidence. The County argues that a letter from the plaintiff's attorney contained an admission against interest which was properly admissible as an exception to the rule against hearsay. Hearsay is an out-of-court statement repeated in court to establish the truth of the matter contained therein. *Henderson v. State* (1983), Ind., 455 N.E.2d 1117, 1119. Hearsay testimony is not admissible unless it falls within a recognized exception to the rule. An admission is a statement against the interest of a party which is inconsistent with a defense or tends to establish or disprove a material fact. *Uebelhack Equip., Inc. v. Garrett Brothers, Inc.* (1980), Ind.App., 408 N.E.2d 136, 138. Assuming without deciding that a statement in a letter by the plaintiff's attorney is binding upon the plaintiff, we do not agree that the statement in question constitutes an admission against interest.

The excluded letter written by the plaintiff's attorney contained the following statement: "The lagoon was built with the advise [sic] of the Purdue Extension Service with the use of pamphlets entitled 'Waste Management PIH–62' and Pamphlet 10–120 entitled 'Design and Operation of Livestock Waste Lagoons'." Record at 52. Parke County argues that the letter showed that Ropak relied on someone other than Dwight Milligan, and that it therefore disproved an essential element of Ropak's fraud claim. We disagree. Ropak based its claim on Milligan's misrepresentations regarding his contact with the State Board of Health, not on his advice about the manner in which the lagoon would be constructed. Even if the letter showed that Cooper relied on the Purdue Extension Service for information on building the lagoon, it does not disprove any element of the plaintiff's misrepresentation claim, and therefore was not an admission against interest.

Even if the statement in the excluded letter constituted an exception to the hearsay rule, we see no need to reverse the decision of the trial court. As a general rule, reversal may be predicated upon the erroneous exclusion of evidence only when the exclusion affects the substantial rights of the parties. Indiana Rules of Procedure, Trial Rule 61; *City of Indianapolis v. Robinson* (1981), Ind.App., 427 N.E.2d 902, 906, *trans. denied.* Furthermore, the trial court has considerable latitude in the admission or rejection of evidence and it is only when an error by the judge relates to a material matter or is of such character as to substantially affect the rights of the parties that such an error justifies a reversal. *School City of Gary v. Claudio* (1980), Ind.App., 413 N.E.2d 628, 635, *reversed on other grounds* (1983), Ind.App., 448 N.E.2d 1212. Even assuming as Parke County claims, that the letter could have been used to impeach Cooper's testimony about his contact with Purdue, we simply do not believe the exclusion of the letter had a substantial effect on Parke County's rights. The statement in the letter focused on the manner of construction; the alleged misrepresentation concerned the State

Board's approval of the project. Any error in the exclusion of the letter was harmless.

*Issue Seven*

 Parke County argues that the trial court erroneously admitted plaintiff's exhibits numbered 15, 16, 17, and 30 which included Ropak's balance sheets, financial statements, and profit and loss statements. The appellant argues that the exhibits contained inadmissible hearsay and that offering them violated the best evidence rule. Even if the exhibits were admitted erroneously, the error was harmless, and we, therefore, will not disturb the trial court's decision. No error in the admission or exclusion of evidence is grounds for reversal on appeal unless the result appears to the court inconsistent with substantial justice. T.R. 61. At every stage of the proceeding the court must disregard any error or defect which does not affect the substantial rights of the parties. *Id.* We cannot say the admission of plaintiff's exhibits 15, 16, 17, and 30 affected Parke County's substantial rights.

The challenged evidence consisted of an accountant's statements regarding Ropak's financial status at various points in time. Parke County argues that without the challenged exhibits, the jury could not have determined damages in the amount of $150,000.00. We disagree. The record contained other evidence on which the jury could have based the award. Cooper testified to the company's sales volume, and Joel Helper testified that in 1981, Crest Mark offered to purchase forty-nine percent (49%) of Ropak for $150,000.00. The record contained ample evidence of Ropak's decline after the lagoon became unusable. Because we conclude admission of exhibits 15, 16, 17, and 30 did not affect the substantial rights of either party, we will not reverse the trial court's decision on that basis.

*Issue Eight*

Parke County argues that the trial court erred in refusing to give several of its tendered instructions. The giving of instructions is largely a matter entrusted to the discretion of the trial court. *Jackson v.*

*Russell* (1986), Ind.App., 498 N.E.2d 22, 38, *trans. denied.* All jury instructions are to be read together and construed as a whole to determine whether the jury was properly instructed. *Id.* As a general rule it is error for a court to refuse to give an instruction if the substance of the instruction is correct, if it is supported by the evidence, if it does not repeat material adequately covered by other instructions, and if the substantial rights of the tendering party would be prejudiced by the failure to give the instruction. *Stenberg*, at 88, 97. However, if the subject matter of an instruction is covered in another instruction, it is not error for the court to refuse to give it. *Id.*

 In the case at bar, the jury received preliminary instructions on three (3) theories of liability: negligence, section 1983, and intentional misrepresentation. Thereafter, the trial court granted Parke County's motion for judgment on the evidence regarding the section 1983 claim and the negligence claim, but allowed the misrepresentation claim to go to the jury. The following final instruction was read to the jury:

"Members of the Jury, the Court has withdrawn from your consideration any issue of liability except that of Plaintiff's contention that Defendant made intentional misrepresentations upon which Plaintiff reasonably relied to its detriment and damage. You are to consider that cause of action against defendant and no other."

Record at 637. Where a case proceeds upon multiple theories, and the jury has been so instructed in the preliminary instructions, but the court later withdraws some of the theories from the jury's consideration, the decision to withdraw must be made not later than the time instructions are settled, final arguments are heard, instructions are given, and the case is submitted to the jury. *Indiana Bank and Trust Co. v. Perry* (1984), Ind.App., 467 N.E.2d 428, 432. The decision must be communicated to the jury, and this is usually done by giving an instruction which informs the jury that certain issues have been withdrawn from its consideration. *Id.*

Parke County argues that the jury should have been told specifically that negligence and the alleged civil rights violation were no longer to be considered. Furthermore, the appellant contends that its tendered instruction stated this more clearly and precisely than did the final instruction given, and that, therefore, the subject matter of the tendered instruction was not adequately covered by another final instruction. We disagree. The trial court is not required to give the best possible instructions, but rather to give instructions which adequately and correctly state the law. *Stenberg*, at 97. The instruction actually given adequately informed the jury that it was to consider only one (1) theory of liability, intentional misrepresentation. The trial court did not err in refusing to give defendant's tendered instruction number one (1).

■ Parke County next challenges the trial court's refusal to give its tendered instruction number five (5). The tendered instruction stated: "Fraud cannot be predicated in this case upon any false statement occurring after September 24, 1980." Record at 614. The appellant argues that because the plaintiff's original complaint alleged that Sept. 24, 1980, was the date on which Dwight Milligan misrepresented the scope of his authority to the Coopers, the jury was not entitled to consider any events which occurred thereafter. The appellant contends that the court's refusal to so limit the time frame resulted in litigation of an unpleaded issue of which the appellant had no notice. We do not agree that Parke County had no notice of issues raised by events which occurred after Sept. 24, 1980.

Indiana Rules of Procedure, Trial Rule 16(J) provides in pertinent part:

"The court shall make an order which recites the action taken at the [pre-trial] conference, the amendments allowed to the pleading, and the agreements made by the parties as to any of the matters considered which limited the issues for trial to those not disposed of by admissions or agreement of counsel, and such order when entered shall control the sub-sequent course of action, unless modified thereafter to prevent manifest injustice."

The trial court made a pre-trial entry on March 18, 1987, which stated "that the plaintiffs' contentions filed on April 2, 1986, wich [sic] set forth specific Contentions of Fact and Law relied upon by the Plaintiffs and which raised legal theories of intentionals [sic] misrepresentation, negligence and claims based upon 42 USC, 1983 [sic] will now control the trial of this cause concerning issues of fact and contentions of law." Record at 478. The document referred to as "plaintiffs' contentions" included allegations of misrepresentation by Dwight Milligan occurring several times between September of 1980 and May of 1981. Parke County clearly was aware of the updated allegations and filed an Objection and Request for Reconsideration and Modification of Pre–Trial Entry. On April 13, 1987, the court entered an order which supplemented its March 18 entry, but did not limit the dates of the alleged misrepresentations. In light of these pre-trial orders, we see no error in the trial court's refusal to give Parke County's tendered instruction number five (5).

■ Next, the appellant argues that the trial court erred in refusing to give its tendered instruction number six (6) which outlined the 180–day notice provision of the ITCA. The question of compliance with the statute is not a question of fact for the jury. *City of Indianapolis v. Satz* (1978), 268 Ind. 581, 584, 377 N.E.2d 623, 625. Rather, the trial court must make the determination of whether proper notice was given, and it must do so prior to trial. *Id.* at 584, 377 N.E.2d at 625. Clearly, an instruction to the jury on the subject of compliance with the ITCA's notice provision would have been inappropriate in the case at bar. The trial court properly refused to give the tendered instruction.

■ Finally, Parke County argues that the trial court erred in refusing its tendered instruction number eight (8) and in modifying its tendered instruction number seven (7). Parke County's instruction seven (7) stated:

"Under Indiana law, the defendant Parke County, Indiana, is not liable if the loss claimed by plaintiff corporation resulted from any of the following acts or omissions:

"(1) The initiation of a judicial or administrative proceeding.

"(2) The performance of a descretionary [sic] function.

"(3) The enforcement of or failure to enforce a law, including rules and regulations.

"(4) The act or omission of someone other than an employee of the defendant.

"(5) The issuance, denial, suspension, or revocation of, or failure or refusal to issue, deny, suspend, or revoke, any permit, license, certificate, approval, order, or similiar authorization where the authority is descretionary [sic] under the law.

"(6) Failure to make an inspection, or making an inadequate or negligent inspection, of plaintiff's property to determine whether the property complied with or violates any law or contains a hazard to healty [sic] or safety.

"(7) Misrepresentation if unintentional.

"Therefore, if you find that plaintiff was damaged by an act or omission of defendant's employee or agent acting within the scope of his authority, but you also find that such act or omission was any of those described above, then your verdict should be for the defendant."

Record at 612. Parke County's tendered instruction number eight (8) outlined the meaning of "discretionary function" and reiterated that governmental entities are immune from liability for the performance of discretionary functions. In place of these instructions tendered by Parke County, the trial court actually gave final instruction number eight (8) as follows:

"Under Indiana law, the defendant Parke County, Indiana, is not liable if the loss claimed by plaintiff corporation resulted from any of the following acts or omissions:

"Misrepresentation if unintentional.

"Therefore, if you find that plaintiff was damaged by an act or omission of de-

fendant's employee or agent acting within the scope of his authority, but you also find that such act or omission was any of those described above, then your verdict should be for the defendant."

Record at 644. We see no error in the refusal of instruction eight (8) as tendered by Parke County or in the modification of instruction seven (7). It is reversible error for a trial court to refuse an instruction covering an essential element of a party's case when it is supported by some evidence, is consistent with the theory of the case, and where there is no other instruction covering that area of the law. *Duchane v. Johnson* (1980), Ind.App., 400 N.E.2d 193, 195. As we noted in our discussion of issue three (3), the defendant can not shield itself from liability under the ITCA buy characterizing the action as something it is not. The theory of this case is intentional misrepresentation, and the ITCA simply does not provide immunity for such conduct, even if the factual circumstances involve a discretionary governmental function. Because the defendant's tendered instructions seven (7) and eight (8) were inconsistent with the theory of the case, the trial court acted properly in respectively modifying and refusing them.

*Issue Nine*

Finally, Parke County contends that the trial court erred in giving final instructions numbered four (4) and eleven (11). Instruction number four (4), Indiana Pattern Jury Instruction 27.61, stated: "Intentional misrepresentation is any cunning or artifice used to cheat or deceive another, it is comprised of acts or concealments involving a breach of duty which result in damage to another." Record at 640. The appellant contends that the instruction was unsupported by the evidence, was adequately covered by another instruction, and was misleading to the jury. Instruction four (4) is a correct statement of the law, nevertheless we will consider whether giving the instruction in this case prejudiced the defendant. We reiterate that the giving of instructions is a matter entrusted to the discretion of the trial court. *Jackson*, at 38. In determining whether the jury was

properly instructed, we read all the instructions together and construe them as a whole. *Id.* One instruction need not contain all the law pertinent to a case; neither will an instruction which is correct be found to be erroneous because it was not an ampler statement of the law. *Id.* Thus, in the case at bar, we construe all the instructions together as a whole to determine whether the jury was properly instructed on the elements of fraud. We conclude that it was.

■ We believe that instruction number four (4) correctly stated the law regarding fraud. However, even if a portion of the instruction did not directly apply to the facts in this case, we do not believe the jury was misled, nor do we believe the verdict would have been different without the disputed instruction. As our standard of review requires, we read instruction four (4) together with instructions three (3) and five (5) which provided:

"In order to recover in an action for intentional misrepresentation, as in this case, the plaintiff has the burden of proving the following propositions:

First: That Dwight Milligan acting within the scope of his authority for the Defendant made a false statement representing it be a statement of an existing fact.

Second: That Dwight Milligan made the statement knowing it to be false.

Third: That the statement was made for the purpose of inducing the plaintiff to act upon it.

Fourth: That the plaintiff did reasonably rely and acted upon the statement made.

Fifth: That as a result plaintiff sustained damage.

"If you find from a consideration of all the evidence that all these propositions have been proved, your verdict should be for the plaintiff. However, if you find from a consideration of all the evidence that any of these propositions have not been proved, your verdict should be for defendant."

Instruction Number Three (3), Record at 639.

"A false statement sufficient to sustain an action for intentional misrepresentation must relate to a present or existing fact. Intentional misrepresentation cannot be predicated upon unfulfilled promises or statements concerning future events. Also intentional misrepresentation cannot be predicated upon a statement of an opinion."

Instruction Number Five (5), Record at 641.

Taken together, the instructions adequately stated the law regarding intentional misrepresentation. Even if instruction four (4) was partially inapplicable to the factual setting of this case, in light of the other instructions, we do not believe the jury was misled. Because it is extremely unlikely that the verdict would have been different without the disputed instruction, we will not reverse on this issue.

■ Parke County contends also that the trial court erred in giving instruction number eleven (11). Instruction eleven (11) read as follows:

"If you find for the plaintiff on the question of liability, you then must determine the amount of money which will fairly compensate the Plaintiff for those elements of damage which were proved by the evidence to have resulted from the wrongful conduct of the Defendant.

"Where personal property is completely destroyed, the measure of damages is the reasonable value of the property at the time of its destruction.

"You are to determine whether damages have been proved by a consideration of the evidence relating to damages. Your verdict must be based on that evidence and not on guess or speculation."

Record, at 647. The appellant argues that the instruction set out an incorrect measure of damages, that it failed to instruct on mitigation or on the definitions of "destruction" and "personal property", and that no factual foundation for the instruction existed. We believe the instruction given was an accurate statement of law; moreover, we will not find an instruction to be erroneous because it was not an ampler statement of the law. In our discussion of

issue five (5) we concluded that the damage award was sufficiently supported by the evidence, and that mitigation of damages as Parke County suggested was inappropriate. We will not reiterate that discussion here. The record contains ample evidence that Ropak, as a corporation, was completely destroyed as a result of the waste disposal problems. Thus, the measure of damages upon which the jury was instructed was appropriate to the factual setting of the case. The appellant has failed to convince us that the jury was misled or confused by the terms "destruction" and "personal property". The jury was adequately instructed on the measure of damages, and because the damage award was supported by the evidence, we will not disturb it.

In light of our conclusions on the above issues raised by the appellant, we do not address appellee's issues "N" and "O". The decision of the trial court is affirmed.

Affirmed.

NEAL and CONOVER, JJ., concur.