STATE of Indiana, Appellant,

v.

T. Eric EVANS, Appellee.

No. 05S02–0311–CV–497.

Supreme Court of Indiana.

June 15, 2004.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Attorneys for Appellant.

Ralph E. Dowling, Indianapolis, IN, Attorneys for Appellee.

ON PETITION TO TRANSFER FROM THE INDIANA COURT OF APPEALS, NO. 05A02–0210–CV–875.

SHEPARD, Chief Justice.

After an audit by the State Board of Accounts, the Attorney General sued former prosecutor T. Eric Evans to recover public money spent on alcohol, hotel rooms, ammunition for personal use, personal phone calls, and the like. Evans contends he is entitled to counsel at public expense. We hold he is not.

On February 12, 2002, the Attorney General filed a complaint against Evans and Western Surety Company to recover public funds "which were found to be misappropriated, diverted or unaccounted for by an examination of the books, accounts and records of the Office of the Prosecutor, Blackford County, Indiana, by the State Board of Accounts." Appellant's App. at 8. The allegations arose from Evans' activities as prosecuting attorney of Blackford County from January 1, 1993, through December 31, 1998. The complaint reads in relevant part:

COUNT I

. . .

4. T. Eric Evans was an employee of the Office of the Prosecutor, Blackford County, Indiana, during the period of the loss and had a duty to properly account for and deposit all funds of the Office of the Prosecutor, Blackford County, Indiana which came into his possession and assure that the funds of the Office of the Prosecutor, Blackford County, Indiana were only expended as authorized by law and commit no acts of misfeasance, malfeasance or nonfeasance in management of said funds.

5. That during the audit period, T. Eric Evans, wrongfully or negligently failed to properly account for, expend and deposit the funds of the Office of the Pro-secut[or], Blackford County, Indiana or otherwise committed several acts of misfeasance, malfeasance and nonfeasance which acts resulted in the misappropriation, diversion and misapplication of public funds.

6. As a direct and proximate result of the actions of T. Eric Evans, he is indebted to the State of Indiana and the Office of the Prosecutor, Blackford County, Indiana in the amount [of] Sixteen Thousand Two Hundred Eighteen Dollars ($16,218.00).

. . .

COUNT II

. . .

10. That Plaintiff, State of Indiana, is a party suffering a pecuniary loss as a result of a violation by Defendant T. Eric Evans, of one or more of the following I.C. 35–43–4–2 [theft], I.C. 35–43–4–3 [criminal conversion] or I.C. 35–43–5–3 [deception], which loss consists of the sum of . . . ($16,218.00) and Plaintiff is entitled to recovery of treble damages in the amount of . . . ($48,654.00) plus costs, attorney fees and all other just and proper relief.

11. That Plaintiff, State of Indiana, is a party suffering a pecuniary loss as a result of a breach by Defendant, T. Eric Evans, of his contract and trust, both real and constructive, . . . and a violation of the resultant trust imposed on him by law and equity to collect, administer, bank and disburse public funds belonging to the State of Indiana and the Office of the Prosecutor, Blackford County, Indiana.

*Id.* at 9–10. The State attached to the complaint the audit performed by the Board of Accounts and Evans' fourteen-page response to the allegations.

Before answering the complaint, Evans filed a motion *pro se* seeking appointment of counsel. He cited Indiana Code § 4–6–

2–1.5, Indiana Code § 33–2.1–9–1, and Indiana Code § 34–13–3–15. In an attached affidavit, Evans averred as follows:

That these claims were all handled and processed in exactly the same manner, as prescribed by law and as directed by the Auditor of Blackford County and the Commissioners of Blackford County.

That all claims submitted by the affiant were in the ordinary and usual course of business, were advertised as required by law, approved by the Auditor, and approved by the County Commissioners and paid by the Treasurer.

That each and every act of submitting claims for payment by the affiant was within the scope of the duties of the affiant as Prosecutor, as prescribed and required by law and practice, and done in good faith by the affiant in his capacity as Prosecutor.

*Id.* at 63.

The trial court granted his motion, saying: "The Attorney General should be directed to comply with the statutory procedure set forth in Indiana Code [§ 33–2.1–9–1(c)(2) ] within thirty days, giving priority to this case as a consideration in the hiring of private counsel for Defendant Evans." *Id.* at 70. The State moved to stay all proceedings and asked the court to certify the order for interlocutory appeal. On October 8, 2002, the trial court granted the State's motion to stay and certified the interlocutory order. The Court of Appeals affirmed. *State v. Evans,* 790 N.E.2d 558 (Ind.Ct.App.2003). We granted transfer.

### Must the Attorney General Supply Counsel?

■ The trial court relied on Indiana Code Annotated § 33–2.1–9–1(c)(2) (West Supp.2003), in determining that Indiana's Attorney General must provide private counsel for Evans. The statute at issue reads in relevant part:

If a judge or prosecuting attorney is sued for civil damages or equitable relief and the suit would be construed, under notice pleading, as arising out of an act performed within the scope of the duties of the judge or prosecuting attorney, the attorney general shall:

(1) defend the judge or prosecuting attorney in the suit; or

(2) authorize the executive director of the division of state court administration to hire private counsel to provide the defense.

Ind.Code Ann. § 33–2.1–9–1(c).

■ While Evans, as a prosecuting attorney, enjoys the protections that this statute provides, we cannot ignore the incongruous result that a literal reading would render under the present facts: the Attorney General's office would be either litigating or financing both sides of this suit. Our method of analyzing statutes on such occasions is this:

When interpreting a statute, appellate courts independently review a statute's meaning and apply it to the facts of the case under review. If a statute is unambiguous, that is, susceptible to but one meaning, we must give the statute its clear and plain meaning. If a statute is susceptible to multiple interpretations, however, we must try to ascertain the legislature's intent and interpret the statute so as to effectuate that intent. We presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results.

*Bolin v. Wingert,* 764 N.E.2d 201, 204 (Ind.2002) (citations omitted). We conclude that the interpretation urged by Evans would produce an absurd result. The statute's objective is to protect officeholders from litigation by those dissatisfied with the decisions they make (typically, in the case of judges and prosecutors, lawsuits by prisoners). We think the General Assembly's intent for situations like the

present case is reflected by its explicit rule for statewide officials. *See* Ind.Code Ann. § 4–6–2–1 (2002) (Attorney General "shall defend all suits brought against the state officers in their official relations, except suits brought against them by the state").

Requiring the Attorney General to finance both sides of this suit is akin to the dog chasing its own tail and an absurdity that the General Assembly could not have intended. *See, e.g., Livingston v. Fast Cash USA, Inc.*, 753 N.E.2d 572 (Ind.2001) (applying the "absurd result rule" to the Indiana Uniform Consumer Credit Code).[1] Whether the statute would afford reimbursement to a defendant who prevails we leave for another day.

Evans also contends that Indiana Code Annotated § 33–14–11–4 (West 1996) entitles him to a defense provided by the State. The statute provides in relevant part: "The state shall pay the expenses incurred by a prosecuting attorney from a threatened, pending, or completed action or proceeding[.]" We conclude that this section is unavailing to Evans for reasons substantially similar to those mentioned above.

### Conclusion

We reverse the trial court's grant of Evans's motion to appoint counsel and remand for proceedings on the merits.

SULLIVAN, BOEHM, and RUCKER, JJ., concur.

DICKSON, J., dissents without opinion.

---

[1] Our Rules of Professional Conduct instruct us as follows: "As a general proposition, loyalty to a client prohibits undertaking representation directly adverse to that client without that client's consent." Ind. Rules of Prof'l Conduct R. 1.7 cmt. (1987). While full disclosure or the hiring of private counsel might resolve the Attorney General's ethical dilemma, the questionable use of public funds to prosecute and defend the same person would still give great concern.