CLINTON COUNTY, Indiana by and through the BOARD OF COMMISSIONERS OF the COUNTY OF CLINTON, Appellant–Plaintiff,

v.

Jacqueline R. CLEMENTS, Appellee–Defendant.

No. 54A01–1008–PL–407.

Court of Appeals of Indiana.

March 18, 2011.

---

Scott A. Weathers, The Weathers Law Office, P.C., Indianapolis, IN, Attorney for Appellant.

Edward R. Hannon, Steuerwald Hannon Zielinski & Witham, Danville, IN, Attorney for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Clinton County, Indiana, by and through the Board of Commissioners of Clinton County ("County"), appeal the trial court's grant of summary judgment to Jacqueline Clements on its complaint against her. We affirm in part, reverse in part, and remand.

### Issues

The County raises two issues, which we consolidate and restate as whether the trial court erred by granting summary judgment to Clements on her claim of governmental immunity. On cross appeal, Clements raises one issue, which we restate as whether the trial court abused its discretion by denying her motion for attorney fees and costs.

### Facts

From August 2004 to November 2008, Clements was the Clinton County Auditor. In 2006, in response to changes in the Indiana Administrative Code regarding property tax management systems, Clements and other Clinton County officials and employees began to investigate software for the evaluation and assessment of property taxes. The County's tax management and assessment software at that time was provided by Manatron, Inc. Clements and others began looking for a solution to the software problem and decided that a "dot net" program should be utilized.[1] Appellant's App. p. 82–83. In September 2006, Clements and Steve Frey, president of the Clinton County Council, met Kishin Bharwani, president of Nikish, Inc., at a conference. Clements left her business card with Bharwani, and he contacted her regarding Clinton County's software needs. Nikish gave Clements and other County officials and employees a demonstration of its dot net software on September 27, 2006.

Nikish proposed that Clinton County would receive a discount for the software if it served as a "BETA" site for new tax billing software and was involved in identifying and solving software problems and "glitches." Id. at 83. Another software company, G.U.T.S., also proposed that Clinton County use its dot net software program. Manatron did not have a dot net program and could not tell Clements "if it would be changing its software to meet the new state requirements or whether it would update its national product." Id. at 84. Another company, LOW, inquired about Clinton County's software needs, but Clements responded that the

---

1.  The county auditor is the fiscal officer of the county. Ind.Code § 36–2–9–2(c). The county auditor is required to:

    (1) maintain an electronic data file of the information contained on the tax duplicate for all:

    (A) parcels; and

    (B) personal property returns; for each township in the county as of each assessment date;

    (2) maintain the electronic data file in a form that formats the information in the file with the standard data, field, and record coding required and approved by:

    (A) the legislative services agency; and

    (B) the department of local government finance;

    (3) transmit the data in the file with respect to the assessment date of each year before March 1 of the next year to:

    (A) the legislative services agency in an electronic format under IC 5–14–6; and

    (B) the department of local government finance;

    in a manner that meets the data export and transmission requirements in a standard format, as prescribed by the office of technology established by IC 4–13.1–2–1 and approved by the legislative services agency. . . .

    I.C. § 36–2–9–20.

County was looking for dot net software, which LOW did not have.

Both Nikish and G.U.T.S. gave presentations to the Clinton County Council at its February 2007 meeting. Nikish's initial proposal was for $231,000.00, minus a $125,000.00 discount for serving as a BETA site, and minus $6,500.00 if Clements produced the manuals, for a final proposal of $99,500.00. G.U.T.S.'s proposal was for $112,650.00. After the demonstrations, the Council discussed the proposals and a Council member made a motion to recommend the Nikish software to the Board of Commissioners. The motion was seconded and passed with a 7–0 vote. A few days later, the Board of Commissioners voted unanimously to enter into the contract with Nikish.

In May 2007, Manatron informed the County that the "estimated costs for the legislative changes due to 50 IAC 23 will be $5,000." *Id.* at 117. At some point, a dispute arose between the County and Nikish, and on December 31, 2008, the Board of Commissioners terminated the contract with Nikish. In June 2009, the County filed an amended complaint against Clements and Nikish. The amended complaint included: (1) breach of contract, fraud, and declaratory judgment claims against Nikish; (2) negligence, actual fraud, and intentional interference with contractual relations claims against Clements; and (3) a civil action by a crime victim claim against both Nikish and Clements. In the negligence action against Clements, the County alleged that she failed to comply with the applicable laws and "was negligent in attempting to comply with same and/or by not complying with same." *Id.* at 29. In the fraud action, the County alleged that Clements knowingly misrepresented to County officials that it would cost $231,000.00 to continue using Manatron as the County's software provider. In the contractual interference claim, the County alleged that Clements intentionally interfered with its Manatron contract. In the civil action by a crime victim action, the County alleged that Clements had procured a government contract "by fraud and other deceptions" and that it was entitled to treble damages. *Id.* at 31.

In March 2010, Clements filed a motion for summary judgment. Clements's motion for summary judgment argued that she had immunity for the performance of discretionary functions. In her affidavit in support of her motion for summary judgment, Clements denied saying that it would cost $231,000.00 to use Manatron software. The County responded that, based on *Parke County v. Ropak,* 526 N.E.2d 732 (Ind.Ct.App.1988), *trans. denied,* governmental employees do not have immunity for fraud or intentional misconduct. The County designated three affidavits in support of its response to Clements's motion for summary judgment. Clements filed a motion to strike portions of the affidavits, which the trial court granted. After a hearing, the trial court granted Clements's motion for summary judgment. The trial court found:

Defendant Clements has filed a Motion for Summary Judgment contending that she is entitled to immunity. Plaintiff filed a response brief asserting that Clements is not entitled to immunity because she intentionally misrepresented facts. The first issue the Court must determine is whether Clements intentionally misrepresented facts to Clinton County. If the Court finds that Clements did not intentionally misrepresent any facts, then the second issue is whether Clements is immune from liability for her actions and statements in connection with the County's switch from Manatron to Nikish.

Appellant's App. p. 16. The trial court concluded that the evidence relied upon by the County did not support a finding of intentional misrepresentation by Clements. The trial court also concluded that Clements was immune from liability pursuant to Indiana Code Section 34–13–3–3(7) because she was acting within the scope of her employment performing a discretionary function.

Clements also filed a motion to require the County to reimburse her for attorney fees and costs based on Indiana Code Section 34–13–3–5. The County filed an opposition to Clements's request based on our supreme court's holding in *State v. Evans*, 810 N.E.2d 335 (Ind.2004). The trial court denied Clements's motion for reimbursement of attorney fees. The trial court found that Indiana Code Section 34–13–3–5 was ambiguous and was intended to apply only "where a third party claimant has filed a claim against a governmental employee personally." Appellee's App. p. 5. The trial court also found that an absurd result would occur if it accepted Clements's interpretation of the statute. The County now appeals, and Clements cross appeals.

### Analysis

### I. Summary Judgment for Clements

The County argues that the trial court erred by granting Clements's motion for summary judgment. Our standard of review for summary judgment is the same standard used by the trial court: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Sheehan Constr. Co. v. Cont'l Cas. Co.*, 938 N.E.2d 685, 688 (Ind. 2010). All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party. *Sheehan*, 938 N.E.2d at 688. Also, review of a sum-

mary judgment motion is limited to those materials designated to the trial court. *Id.*

Once the moving party has sustained its initial burden of proving the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law, the party opposing summary judgment must respond by designating specific facts establishing a genuine issue for trial. *Id.* at 689. If the opposing party fails to meet its responsive burden, the court shall render summary judgment. *Id.*

The issue here concerns the Indiana Tort Claims Act ("ITCA"), which allows suit against government entities for torts committed by their agencies or employees but grants immunity under the specific circumstances enumerated in Indiana Code Section 34–13–3–3. *Gibson v. Evansville Vanderburgh Bldg. Comm'n*, 725 N.E.2d 949, 952 (Ind.Ct.App.2000), *trans. denied.* Whether a governmental entity is immune from liability under the ITCA is a question of law for the courts. *Id.* The party seeking immunity bears the burden of proving that its conduct falls within the ITCA and is, thus, shielded from liability. *Id.* at 953. Indiana Code Section 34–13–3–3 provides: "A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the following: ... (7) The performance of a discretionary function; ... [or] (14) Misrepresentation if unintentional ...."

Based on the designated evidence, the trial court found that Clements's actions were discretionary, not intentional misrepresentations, and that she was entitled to immunity from the County's claims. On appeal, the County does not address the trial court's finding that Clements's actions were discretionary. Rather, the County argues that Clements only sought summary judgment on immunity and that

the trial court should not have addressed the intentional misconduct issue. Further, the County argues that, even if the trial court properly addressed the intentional misconduct issue, a genuine issue of material fact existed regarding whether Clements represented that it would cost $231,000.00 to use Manatron software.

In support of its argument that the trial court should not have addressed the intentional misconduct issue, the County relies upon *Parke County v. Ropak, Inc.*, 526 N.E.2d 732 (Ind.Ct.App.1988), *trans. denied.* There, a business filed a complaint against a county and its sanitarian because the county's sanitarian informed the business that its lagoon had been approved by the State Board of Health when it had not, in fact, been approved. The jury entered a $150,000 judgment for the business on its fraud allegation. On appeal, the county argued that it was immune from liability pursuant to Indiana Code Section 34–4–16.5–3 (repealed by Pub.L. No. 1–1998, § 221, *see now* Ind.Code § 34–13–3–3). We disagreed, noting that immunity applied to a "misrepresentation if unintentional." *Ropak*, 526 N.E.2d at 738 (discussing Ind.Code § 34–4–16.5–3(13)). In interpreting Indiana Code Section 34–4–16.5–3(13), we held:

> We do not believe the legislature intended by the language of subsection (13) to grant immunity for intentional misrepresentation so long as the factual setting of the misrepresentation fits within another subsection of the statute. Rather, subsection (13) provides that a government entity will be immune from liability for misrepresentation only where the misrepresentation was unintentional; conversely, no immunity will apply to any intentional misrepresentation, regardless of the factual setting.

*Id.* We concluded that a plaintiff "cannot escape the immunity provisions of the ITCA merely by characterizing his action as something it is not." *Id.* We declined the county's "invitation to ignore the intentional misrepresentation and focus instead on inapplicable subsections of the statute." *Id.* Because the nature of the action was intentional misrepresentation and we held that the ITCA does not provide immunity for such conduct under any circumstances, we did not discuss whether the sanitarian's conduct fell under other subsections of the statute, which would have provided immunity.

The focus of our determination in *Ropak* was whether the county could claim immunity by focusing its attention on other subsections of the immunity statute, such as the discretionary function, while ignoring the intentional misrepresentation subsection of the statute. We determined that it could not. The County here argues that, under *Ropak*, immunity cannot be granted on summary judgment any time the plaintiff merely alleges intentional misconduct or fraud. We believe that this argument misses the point of *Ropak*.

The County also relies upon *Reiswerg v. Statom*, 926 N.E.2d 26 (Ind.2010), but we find that case inapplicable here. In *Reiswerg*, our supreme court addressed a party's responsibilities when responding to a motion for summary judgment or a partial motion for summary judgment. The County relies upon the following portion of *Reiswerg* in which our supreme court held:

> A party responding to a motion for summary judgment is entitled to take the motion as the moving party frames it. The defendants were under no obligation to raise their affirmative defenses in response to the motion for partial summary judgment that Statom presented. A non-movant is not required to address a particular element of a claim unless the moving party has first addressed and presented evidence on

that element. *Jarboe v. Landmark Community Newspapers, Inc.,* 644 N.E.2d 118, 123 (Ind.1994); *see also Kennedy v. Murphy,* 659 N.E.2d 506, 508 (Ind.1995) (plaintiff need not address the issue of causation in response to defendant's motion for summary judgment on the standard of care element in medical malpractice action). These decisions addressed issues on which the moving party had the burden of proof. In the case before us today, the affirmative defense of statute of limitations is one on which the non-moving defendants had the burden of proof, but this does not alter the plaintiffs obligation to put in play the issue upon which the plaintiff seeks relief.

*Reiswerg,* 926 N.E.2d at 30–31. Ultimately, our supreme court held "a party is required to assert affirmative defenses in response to a motion for summary judgment that would dispose of the case or a motion for partial summary judgment that would establish liability." *Id.* at 31. However, where the plaintiff moves only for partial summary judgment on an issue or an element but not as to liability, the defendant is under no obligation to present all of its affirmative defenses at the summary judgment stage. *Id.* at 32.

The County uses *Reiswerg* to argue that, because Clements raised only immunity on summary judgment, the trial court could only consider immunity and could not consider whether genuine issues existed regarding her alleged intentional misconduct. Again, we believe that the County misinterprets *Reiswerg.* Clements did not move for partial summary judgment. If granted summary judgment on her im-

munity claim, she was entitled to a full judgment in her favor on the County's claims. Clements argued to the trial court that her actions were "discretionary" and that she was entitled to immunity. Appellant's App. p. 72. Once Clements met her initial burden of proving the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law, which she did, the County was required to respond by designating specific facts establishing a genuine issue for trial. *Sheehan,* 938 N.E.2d at 689. The County did not address Clements's argument that her actions were discretionary. Rather, the County argued that her actions were intentional misconduct. However, the County could not meet its burden by merely pointing out that its complaint alleged intentional misconduct. The County was required to establish genuine issues of material fact, and the trial court properly addressed whether genuine issues existed regarding the alleged intentional misconduct.[2]

■ Next, the County argues that, even if the trial court properly considered the intentional misconduct allegation, genuine issues of material fact existed regarding that allegation, and summary judgment was precluded as a result. According to the County, Clements intentionally misinformed the County Council that it would cost $231,000.00 to continue using Manatron's software services. The County also alleges that she failed to inform the County Council that it would cost $5,000.00 to continue using Manatron's software.

Clements designated evidence that Nikish, not Manatron, submitted an initial

2. The County's complaint included claims against Clements for negligence, actual fraud, intentional interference with contractual relations, and civil action by a crime victim claim. In response to Clements's motion for summary judgment, the County did not differentiate between its response regarding the negligence claim and the other intentional conduct claims. On appeal, the County also does not address the difference between the negligence claim and the intentional conduct claims.

proposal for $231,000.00 for its software package. According to Clements, she and other County officials determined that a dot net software package would be preferable and that Manatron did not have a dot net software package. Two companies with dot net programs gave presentations to the County Council, and the Council voted to accept Nikish's proposal. In her affidavit, Clements stated that she never informed the Council that it would cost $231,000.00 to continue using Manatron. A few months after the County entered into a contract with Nikish, Manatron informed the County that it would cost $5,000.00 to revise its software due to the legislative changes. The County submitted three affidavits providing that Clements did inform the Council that it would cost in excess of $200,000.00 to continue using Manatron for the County's software.

The trial court rejected the County's argument, finding that, even if Clements made the statement at issue, it did not establish a genuine issue of material fact that would preclude summary judgment. The trial court observed:

> Indiana courts recognize that where the alleged statements cannot be construed as anything but an expression of opinion or belief or a representation of law, the court may properly find that statements are not misrepresentations of present or past facts. *Plymale v. Uprights [Upright]*, 419 N.E.2d 756, 760 (Ind.Ct.App.1981). In this case, Plaintiff has failed to provide any evidence suggesting that Clements' assertion that a software upgrade from Manatron would cost in excess of $200,000 was an intentional misrepresentation of a past or present fact at the time made. Clements' purported statement that it would cost Clinton County an amount in excess of $200,000 to continue using the Manatron software is clearly one of opinion or prediction. Although Plaintiff's Affiants

state that a Manatron upgrade would only cost $5,000, Plaintiff has failed to show that such information was within the knowledge of Clements at the time Clements made her purported statement that a software upgrade from Manatron would cost in excess of $200,000. Plaintiff has also failed to show that the Manatron upgrade would give the same performance and satisfy the needs as would the Nikish software. There is no evidence suggesting that Clements knew that the statement was untrue or that she made the statement with such knowledge. As a result, Plaintiff has not provided evidence establishing that Clements misrepresented a past or existing fact.

Appellant's App. p. 18–19.

■■ We agree with the trial court's analysis on this issue. "Mere expressions of opinion cannot be the basis for an action in fraud; an action in fraud requires a misrepresentation of material fact." *Block v. Lake Mortg. Co., Inc.*, 601 N.E.2d 449, 451 (Ind.Ct.App.1992). A fraudulent misrepresentation involves a false statement regarding a past or existing material fact. *Verrall v. Machura*, 810 N.E.2d 1159, 1162 (Ind.Ct.App.2004), *trans. denied.* The designated evidence demonstrated that Manatron's $5,000 proposal was not submitted until months after the County accepted Nikish's proposal. There is no designated evidence suggesting that Clements was aware of the $5,000 proposal during the February meetings with the County Council and County Board. Even if Clements made a statement to the Council or the Board that it would cost $200,000 for Manatron to upgrade its software, that alleged statement was a statement of opinion, and a claim for intentional misrepresentation cannot rest on a statement of opinion. Moreover, the County was accepting proposals for dot net software, and

there is no designated evidence showing that Manatron's $5,000 upgrade was comparable to the dot net software. The trial court properly found that no genuine issue of material fact existed regarding an intentional misrepresentation and that Clements was entitled to judgment as a matter of law.

### II. Clements's Attorney Fees

■ On cross appeal, Clements argues that the trial court erred by denying her request for reimbursement of her attorney fees and costs. A trial court's decision to grant or to deny attorney's fees will not be disturbed absent an abuse of discretion. *Poulard v. Lauth,* 793 N.E.2d 1120, 1124 (Ind.Ct.App.2003). An "[a]buse of discretion will be found only when the trial court's action is clearly erroneous, that is, against the logic and effect of the facts before it and the inferences which may be drawn therefrom." *In re Paternity of P.S.S.,* 934 N.E.2d 737, 741 (Ind.2010).

This issue requires us to interpret statutes governing the reimbursement of a government employee's attorney fees. When interpreting a statute, appellate courts independently review a statute's meaning and apply it to the facts of the case under review. *Bolin v. Wingert* 764 N.E.2d 201, 204 (Ind.2002). If a statute is unambiguous, that is, susceptible to but one meaning, we must give the statute its clear and plain meaning. *Id.* If a statute is susceptible to multiple interpretations, however, we must try to ascertain the legislature's intent and interpret the statute so as to effectuate that intent. *Id.* We presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results. *Id.*

Clements's motion was based on Indiana Code Section 34–13–3–5(e), which provides:

The governmental entity shall provide counsel for and pay all costs and fees incurred by or on behalf of an employee in defense of a claim or suit for a loss occurring because of acts or omissions within the scope of the employee's employment, regardless of whether the employee can or cannot be held personally liable for the loss.

The plain language of Indiana Code Section 34–13–3–5(e) does not specifically limit the governmental entity's duty to reimburse the employee even where the governmental entity has filed the action against the employee and would seem to require reimbursement here. However, the trial court denied Clements's motion based on *State v. Evans,* 810 N.E.2d 335 (Ind.2004).

In *Evans,* the Attorney General filed a complaint against a county prosecutor for reimbursement of public funds that were "misappropriated, diverted or unaccounted for." *Evans,* 810 N.E.2d at 336. Before filing an answer, the prosecutor filed a motion for appointment of counsel, which the trial court granted. On interlocutory appeal, our supreme court reversed. The court noted Indiana Code Section 33–2.1–9–1(c)(2), which required the Attorney General to defend or the executive director of state court administration to hire outside counsel for a judge or prosecuting attorney sued for civil damages or equitable relief arising out of the scope of the judge or prosecuting attorney's duties. However, it held that the statute's objective was to "protect officeholders from litigation by those dissatisfied with the decisions they make" and that absurd results would occur if the Attorney General's office was litigating and financing both sides of the suit. *Id.* at 337. The court looked to Indiana Code Section 4–6–2–1, which required the Attorney General to defend all state officers unless the suit is brought

against them by the state, for the legislature's intent. However, the court specifically left for another day whether "the statute would afford reimbursement to a defendant who prevails." *Id.* at 338.

The situation left for another day in *Evans* is the situation we have before us now. Although our supreme court concluded in *Evans* that it would be absurd to require the Attorney General to finance both sides of the litigation against the prosecutor accused of misappropriating funds during the litigation, it specifically left open the possibility of reimbursing an employee who prevails in such an action. Here, the County sued Clements, but Clements has prevailed on summary judgment. As our supreme court noted, the statute's objective is to "protect officeholders from litigation by those dissatisfied with the decisions they make," which is exactly the situation here. *Id.* at 337. The County was dissatisfied with decisions made regarding the tax software and filed an unsuccessful and, at best, highly questionable action against Clements.

In addition to Indiana Code Section 34–13–3–5(e), Clements looks to Indiana Code Chapter 36–1–17, which was enacted after *Evans*, to ascertain the legislature's intent. Indiana Code Section 36–1–17–2 provides in part that "a unit [3] or municipal corporation may not pay the legal expenses incurred by an officer or employee of the unit or the municipal corporation: (1) in defending against ... (B) a civil action brought by the attorney general of the United States, a United States attorney, the attorney general of Indiana, or an Indiana prosecuting attorney" under certain statutes. (footnote added). However, Indiana Code Section 36–1–17–3(c) provides:

An officer or employee of a unit or municipal corporation who is the defendant in a civil action described in section 2(1)(B)(i) through section 2(1)(B)(viii) of this chapter and brought by a person described in section 2(1)(B) of this chapter that involves an action within the scope of the official duties of the officer or employee may apply to the fiscal body of the unit or municipal corporation for reimbursement of reasonable and customarily charged expenses incurred in the officer's or employee's defense in the civil action. The fiscal body of the unit or municipal corporation shall reimburse the officer or employee for reasonable and customarily charged expenses incurred in the officer's or employee's defense against the civil action if:

(1) *all claims that formed the basis of the civil action have been dismissed; or*

(2) *a judgment is rendered in favor of the officer or employee on all counts in the civil action.*

(emphasis added). Indiana Code Section 36–1–17–3(c) does not apply to Clements because the civil action against her was not brought by the attorney general of the United States, a United States attorney, the attorney general of Indiana, or an Indiana prosecuting attorney. However, it shows an intent by the legislature to reimburse an officer or employee wrongly accused by a governmental entity in certain civil suits.

As our supreme court noted in *Evans*, "[w]e presume the legislature intended logical application of the language used in the statute, so as to *avoid unjust or absurd results.*" *Evans*, 810 N.E.2d at 337 (quoting *Bolin*, 764 N.E.2d at 204) (emphasis added). In *Evans*, the court focused on

---

**3.** " 'Unit' means county, municipality, or township." I.C. § 36–1–2–23.

avoiding "absurd results." *Id.* at 338. Here, we conclude that interpreting Indiana Code Section 34–13–3–5(e) to preclude payment of Clements's attorney fees would be unjust. Where, as here, a county has filed an unsuccessful and highly questionable action against its former auditor, it would be unjust to deny her request for reimbursement of her attorney fees. We conclude that Clements is entitled to reimbursement of her attorney fees under a plain reading of Indiana Code Section 34–13–3–5(e). The trial court abused its discretion by denying Clements's request.

### Conclusion

The trial court properly granted summary judgment to Clements on her claim for immunity under Indiana Code Section 34–13–3–3. However, the trial court abused its discretion when it denied Clements's motion for reimbursement of attorney fees under Indiana Code Section 34–13–3–5(e). We affirm in part, reverse in part, and remand for a calculation of attorney fees owed to Clements.

Affirmed in part, reversed in part, and remanded.

BAKER, J., and VAIDIK, J., concur.