Rebecca BOLIN and Calvin Bolin,
Appellants (Plaintiffs Below),

v.

Brandon A. WINGERT, Appellee
(Defendant Below).

No. 87S01–0203–CV–177.

Supreme Court of Indiana.

March 11, 2002.

Glenn A. Deig, Evansville, for Appellants.

Patricia K. Woodring, Shawn M. Sullivan, Terrell, Baugh, Salmon & Born LLP, Evansville, for Appellee.

SHEPARD, Chief Justice.

In a case of first impression under Indiana's Child Wrongful Death Statute, we address the question whether an eight-to ten-week-old fetus fits the definition of "child." We conclude that it does not.

### Facts and Procedural History

While driving on April 13, 1996, Rebecca Bolin stopped her car in the roadway, waiting for the car in front of her to turn. Brandon Wingert struck Bolin's vehicle from behind, and Bolin suffered several injuries, including a miscarriage. Bolin was eight to ten weeks pregnant at the time.

On February 5, 1998, Bolin and her husband Calvin filed suit. Count III of their complaint alleged that Wingert caused Bolin's miscarriage and requested compensation for the wrongful death of their unborn child. In response, Wingert moved for partial summary judgment, alleging that the Child Wrongful Death Statute[1] did not provide for such a recovery. The trial court granted Wingert's motion.

The Bolins appealed, and the Court of Appeals held that "child" was not expressly defined by the legislature. *Bolin v. Wingert*, 742 N.E.2d 36, 37 (Ind.Ct.App. 2001). Relying on a 1972 decision, the court held that only "an unborn *viable* child" had a claim under the Wrongful Death Statute. *Id.* at 38 (emphasis in original) (citing *Britt v. Sears*, 150 Ind. App. 487, 498, 277 N.E.2d 20, 27 (1972)). Because the Bolins had not produced any evidence that the unborn child was "capable of independent life," the Court of Appeals affirmed the trial court's grant of partial summary judgment. *Id.*

### I. Standard of Review

Summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C); *Shell Oil Co. v. Lovold Co.*, 705 N.E.2d 981 (Ind.1998). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Id.* at 984. An appellant bears the burden of demonstrating it was error to grant summary judgment, though appellate courts scrutinize such rulings carefully to assure that a party was not improperly denied his or her day in court. *Owens Corning Fiberglass . Corp. v. Cobb*, 754 N.E.2d 905 (Ind.2001) (citations omitted).

### II. The Applicable Wrongful Death Statute

At common law, a person killed by another's tortious acts had no right to recover damages. The victim's dependents or other heirs therefore had no recognized cause of action, either. This inequity gave rise to wrongful death statutes, first in England in 1846, and soon thereafter in every United States jurisdiction. *See* Stuart M. Speiser et al., Recovery for Wrongful Death and Injury § 1.1, 1.8 (1992). Indiana's wrongful death statutes are found at Indiana Code § 34–23–1–1 (general wrongful death statute), § 34–23–1–2 (death of adult persons), and § 34–23–2–1 (injury or death of children).

We first note that appellants cited the wrong version of the Child Wrongful Death Statute to the trial court and Court of Appeals. (*See* Appellant's Br. at 7.) At the time of the accident in 1996, Indiana's Child Wrongful Death Statute was found at Indiana Code § 34–1–1–8. This version of the statute reflected major legislative revisions made in 1987 and 1989, including the addition of a definition of "child." *See*

---

1. Ind.Code Ann. § 34–23–2–1 (West 1998).

P.L. 306–1987; P.L. 33–1989.[2] The Court of Appeals relied on a version of the statute that preceded the 1987 and 1989 amendments.[3]

■ The applicable statute provides that "[a]n action may be maintained under this section against the person whose wrongful act or omission caused the injury or death of a child." Ind.Code Ann. § 34–1–1–8(b) (West 1996). It defines "child" as follows:

> As used in this section, "child" means an unmarried individual without dependents who is:
>
> (1) less than twenty (20) years of age; or
>
> (2) less than twenty-three (23) years of age and is enrolled in an institution of higher education or in a vocational school or program.

*Id.* at § 34–1–1–8(a). The statute allows parents to recover damages for the loss of the child's services, love, and companionship, as well as expenses such as hospital bills and funeral costs resulting from the child's death. *See id.* at § 34–1–1–8(e).

The Bolins argue that the definition of "child" encompasses all unborn children. Wingert asserts that Indiana's Child Wrongful Death Statute does not cover unborn fetuses incapable of independent life. (*See* Appellants' Br. at 5; Appellee's Br. at 6.)

## III. Interpreting the Child Wrongful Death Statute

■ When interpreting a statute, appellate courts independently review a statute's meaning and apply it to the facts of the case under review. If a statute is unambiguous, that is, susceptible to but one meaning, we must give the statute its clear and plain meaning. *See Elmer Buchta Trucking, Inc. v. Stanley,* 744 N.E.2d 939, 942 (Ind.2001). If a statute is susceptible to multiple interpretations, however, we must try to ascertain the legislature's intent and interpret the statute so as to effectuate that intent. *Id.* (citing *Whitacre v. State,* 629 N.E.2d 1236 (Ind.1994)). We presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results. *Sales v. State,* 723 N.E.2d 416, 420 (Ind.2000).

We begin by mentioning what this case is not. It does not call for "any moral, philosophical or theological determination[s] of what constitutes a person or a life." *Wade v. United States,* 745 F.Supp. 1573, 1577 (D.Haw.1990). While the larger, more politically charged issues in this field are quite apparent, our sole task is to determine the scope of the word "child" in the Wrongful Death Statute.

In the absence of clear legislative guidance, the challenge is where to draw the line against otherwise open-ended liability. *See* W. Page Keeton et al., *Prosser and*

---

**2.** Since 1989, the statute has remained unchanged, though it was recodified as Indiana Code § 34–23–2–1 in 1998. *See* P.L. 1–1998, Sec. 18.

**3.** The Court of Appeals quoted the statute as follows:

> The father and mother jointly, or either of them by naming the other parent as a co-defendant to answer as to his or her interest, or in case of divorce or dissolution of marriage the person to whom custody of the child was awarded, may maintain an action for the injury or death of a child; and a guardian may maintain such action for the injury or death of his ward; in case of death of the person to whom custody of the child was awarded, a guardian shall be appointed to maintain an action for the injury or death of his ward. But when the action is brought by the guardian for an injury to his ward, the damages shall inure to the benefit of his ward.

*Bolin,* 742 N.E.2d at 37.

*Keeton on the Law of Torts* 287 (5th ed.1984). While this is not always an easy task, we bear in mind Justice Holmes' words: "Neither are we troubled by the question where to draw the line. That is the question in pretty much everything worth arguing in the law." *Irwin v. Gavit,* 268 U.S. 161, 168, 45 S.Ct. 475, 69 L.Ed. 897 (1925) (citation omitted).

[8] Our research reveals a wealth of court opinions and scholarship on the subject of wrongful death and the unborn child. *See, e.g.,* Sheldon R. Shapiro, *Right to Maintain Action or to Recover Damages for Death of Unborn Child,* 84 A.L.R.3d 411 (1978 & Supp.2001). Although each state has a uniquely drafted wrongful death statute, courts have generally resolved this question in one of four ways: (1) permit recovery only for the death of children "born alive," [4] (2) permit recovery only for the death of "viable" unborn children,[5] (3) permit recovery for the death of unborn children that are "quick," [6] and (4) permit recovery for the death of any unborn child.[7] *See, e.g.,* Mamta K. Shah, *Inconsistencies in the Legal Status of an Unborn Child: Recognition of a Fetus as Potential Life,* 29 Hofstra L.Rev. 931, 938–51 (2001); Daniel S. Meade, *Wrongful Death and the Unborn Child: Should Viability Be a Prerequisite for a Cause of Action?,* 14 J. Contemp. Health L. & Pol'y 421, 426–44 (1998).

Although this scholarship is helpful, we must focus on the language of Indiana's Child Wrongful Death Statute. While the legislature has clearly set upper limits on the definition of "child," it is not as plain that it has placed a "lower" limit on the definition of "child."

*A.  The Wrongful Death Statute's Express Language.* In *Britt v. Sears,* 150 Ind.App. 487, 277 N.E.2d 20 (1971), the Court of Appeals addressed a prior version of Indiana's Child Wrongful Death Statute

---

4.  *See, e.g., Justus v. Atchison,* 19 Cal.3d 564, 139 Cal.Rptr. 97, 565 P.2d 122 (1977), *disapproved of by Ochoa v. Superior Court,* 39 Cal.3d 159, 216 Cal.Rptr. 661, 703 P.2d 1 (1985); *Hernandez v. Garwood,* 390 So.2d 357 (Fla.1980); *Stern v. Miller,* 348 So.2d 303 (Fla.1977); *Endresz v. Friedberg,* 24 N.Y.2d 478, 301 N.Y.S.2d 65, 248 N.E.2d 901 (1969); *Sosebee v. Hillcrest Baptist Med. Ctr.,* 8 S.W.3d 427 (Tex.App.1999). The "born alive" rule generally requires that the injured child be born alive before recovery is permitted. Our research reveals that about ten states adhere to the "born alive" standard.

5.  *See, e.g., Eich v. Town of Gulf Shores,* 293 Ala. 95, 300 So.2d 354 (1974); *Mone v. Greyhound Lines, Inc.,* 368 Mass. 354, 331 N.E.2d 916 (1975); *Verkennes v. Corniea,* 229 Minn. 365, 38 N.W.2d 838 (1949). The "viability" standard is the predominant rule, followed by over thirty states. *See* Sarah J. Loquist, *The Wrongful Death of a Fetus: Erasing the Barrier Between Viability and Nonviability,* 36 Washburn L.J. 259, 259–60 (1997). A fetus is viable when it is "so far formed and developed that if then born it would be capable of living." *Thibert v. Milka,* 419 Mass. 693, 646 N.E.2d 1025, 1025 n. 3 (1995) (citations omitted).

6.  *See Shirley v. Bacon,* 154 Ga.App. 203, 267 S.E.2d 809 (1980). A child is considered "quick" when the fetus "is able to move in its mother's womb." *Id.* at 811 (citation omitted). Georgia is the only state we found that follows the "quick" standard.

7.  *See, e.g., Connor v. Monkem Co.,* 898 S.W.2d 89 (Mo.1995); *Wiersma v. Maple Leaf Farms,* 543 N.W.2d 787 (S.D.1996); *Farley v. Sartin,* 195 W.Va. 671, 466 S.E.2d 522 (1995). States permitting wrongful death actions for non-viable fetuses are in the minority. *See* Loquist, *supra* note 4, at 278–80. Based on our research, West Virginia is in fact the only state that allows recovery for non-viable fetuses without express language from the legislature that "unborn children" are included within the scope of the state's wrongful death statute.

that lacked a definition of "child." [8] The Court of Appeals provided the following thoughtful analysis:

> [W]e find no objective reason for saying that the 1881 Legislature which gave the father the right to "maintain an action for the injury or death of a child" did not intend "child" to include a stillborn child. Whatever was in their minds is not recorded and is, at best, a matter of mere supposition. But if we may, arguendo, indulge in our own supposition it would be this: That since actions for pre-natal injuries and deaths were then unknown in Indiana jurisprudence our lawmakers very probably gave no thought to whether they were creating an action for pre-natal injury or pre-natal death, or whether their word "child" was the same word "child" so often used in referring to a pregnant woman as being "with child."

150 Ind.App. at 494, 277 N.E.2d at 24–25.[9] Without a definition of "child" for guidance, the court concluded that a "full term healthy male capable of independent life" was a "child within the meaning of the statute." 150 Ind.App. at 498, 277 N.E.2d at 27.

The 1987 revisions of the Child Wrongful Death Statute present us with a very different situation today. Rather than relying exclusively upon policy and logic, as the *Britt* court was forced to do, we are now able to consider the evident intent of the legislature as expressed by the provisions it added to the Indiana Code. These provisions do not support the conclusion the Bolins seek.

■ We look first to the legislature's basic definition of "child": "an unmarried individual without dependents who is less than twenty (20) years of age." Ind.Code Ann. § 34–1–1–8(a) (West 1996). This definition contains four concepts: an (1) unmarried, (2) individual, (3) without dependents, (4) who is less than twenty years of age.

■ The first three concepts tend to indicate the legislature contemplated that only living children would fall within the definition of "child." "Unmarried" and "without dependents" involve activities in which only living persons engage. While very young children cannot marry or have dependents, the vocabulary suggests a desire to define persons who have been born. It would strain this rather express language to read "unmarried individual without dependents" to encompass an unborn child. A foremost precept of statutory interpretation is avoiding illogical and absurd results. *See Mayes v. State,* 744 N.E.2d 390, 393 (2001).

The words chosen by the legislature to define "child" have accepted public meanings that point in a similar direction. Black's Law Dictionary defines "individual" as "[e]xisting as an indivisible entity." Black's Law Dictionary 777 (7th ed.1999). Webster's Dictionary says among other things that an "individual" is a being "referred to by a proper name." Webster's Third New International Dictionary 1152 (1993). This is language human beings use to describe other independently living human beings.

8. As opposed to the eight- to ten-week-old fetus in our case, the unborn child in *Britt* was in gestation for nine months and one week. 150 Ind.App. at 488, 277 N.E.2d at 21.

9. In *Britt,* the wrongful death statute in question was enacted in 1881. We note a substantial research tool not cited by any of the parties. The "Brevier Legislative Reports," published biennially between 1858 and 1887, are verbatim reports of legislative history of the Indiana General Assembly during those years. *See* Justin E. Walsh, The Centennial History of the Indiana General Assembly, 1816–1978 at 238–39 (1987).

In contrast to the apparent meaning of the express language used in the statute at issue in this case, in other contexts the legislature has enacted protections for unborn children using explicit language. For example, Indiana Code § 35–42–1–6, enacted in 1979, imposes criminal liability for the knowing or intentional termination of a human pregnancy.[10] *See* P.L. 153–1979, Sec. 3; Ind.Code Ann. § 35–42–1–6 (West 1998). In addition, the legislature has made it a crime to traffic in fetal tissue.[11] *See* Ind.Code Ann. § 35–46–5–1 (West 1998).

From these statutes, it is apparent that the legislature knows how to protect unborn children. The fact that the legislature did not expressly include unborn children within the definition of "child" in the Child Wrongful Death Statute lends further credence to our conclusion that an eight- to ten-week-old fetus does not meet the statute's definition of "child."

■■ As we observed above, the wrongful death action is entirely a creature of statute. *Durham v. U–Haul Int'l*, 745 N.E.2d 755 (Ind.2001). Because this statute is in derogation of the common law, we construe it strictly against the expansion of liability. *Ed Wiersma Trucking Co. v. Pfaff*, 643 N.E.2d 909, 911 (Ind.Ct. App.1994), *opinion adopted by* 678 N.E.2d 110 (Ind.1997).

■ The express language of the statute and the fact that it is to be narrowly construed lead us to conclude that the legislature intended that only children born alive fall under Indiana's Child Wrongful Death Statute. The legislature can certainly expand the scope of protection under the Child Wrongful Death Statute if it so chooses.

*B. A Mother's Remedy.* The exclusion of unborn children from Indiana's Child Wrongful Death Statute does not mean that negligently injured expectant mothers have no recourse. As the Missouri Supreme Court has observed, "[T]he mother has her own action for negligently inflicted injury, in which the circumstances of her pregnancy and miscarriage may be brought out and considered as part of the intangible damages." *Rambo v. Lawson*, 799 S.W.2d 62, 63 (Mo.1990), *superseded by statute as stated in Connor v. Monkem Co.*, 898 S.W.2d 89 (Mo.1995).

■ It is well established in Indiana law that damages are awarded to compensate an injured party fairly and adequately for her loss, and the proper measure of damages must be flexible enough to fit the circumstances. *Bader v. Johnson*, 732 N.E.2d 1212 (Ind.2000). In tort actions generally, all damages directly related to the wrong and arising without an intervening agency are recoverable. *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515 (Ind.1993).

■■ It is hornbook law that a tortfeasor takes the injured person as he finds her, and the tortfeasor is not relieved from liability merely because an injured party's pre-existing physical condition makes him or her more susceptible to injury. When some injury was foreseeable and the de-

---

**10.** Indiana Code § 35–42–1–6 states that "[a] person who knowingly or intentionally terminates a human pregnancy with an intention other than to produce a live birth or to remove a dead fetus commits feticide, a Class C felony. This section does not apply to an abortion performed in compliance with … IC 16–34."

**11.** Indiana Code § 35–46–5–1(d) states that "[a] person who intentionally acquires, receives, sells, or transfers in exchange for an item of value … fetal tissue commits unlawful transfer of human tissue, a Class C felony." "Fetal tissue" is defined as "tissue from an infant or a fetus who is stillborn or aborted." *Id.* at § 35–46–5–1(a).

fendant's negligence proximately caused the aggravated injury, this rule allows recovery for an injury even if its ultimate extent was unforeseeable. *Morton v. Merrillville Toyota, Inc.*, 562 N.E.2d 781 (Ind. Ct.App.1990).

Count I of the Bolins' complaint seeks compensation for the pain and suffering Rebecca incurred as a result of the accident. (R. at 7.) [12] It is foreseeable that pregnant mothers may be driving on the roadway and that negligent operation of a vehicle may injure these expectant mothers. Rebecca may claim damages to compensate her for her miscarriage.

### Conclusion

We affirm the decision of the trial court.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.

---

**12.** Count II of the complaint seeks compensation for Calvin Bolin's loss of consortium with his wife.