Brian CHISM, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 54A05–0401–CR–43.

Court of Appeals of Indiana.

Aug. 12, 2004.

Ian A.T. McLean, Crawfordsville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

Brian Chism appeals the trial court's finding that he violated his probation and the modification of the conditions of his probation. Chism raises three issues, which we consolidate and restate as:

I. Whether the trial court's findings that Chism violated his home detention by being absent from his home without permission and by failing to pay home detention fees are supported by substantial evidence; and

II. Whether the trial court abused its discretion by modifying the conditions of Chism's probation to allow the use of monitoring by a global positioning satellite ("GPS") system.

We affirm in part, reverse in part, and remand.

The relevant facts follow. In 1997, Chism pleaded guilty to conspiracy to deliver cocaine as a class A felony and operating a vehicle while intoxicated as a class D felony. The trial court sentenced Chism to thirty-five years for the class A felony conviction with ten years executed and twenty-five years suspended. The trial court ordered Chism to serve ten years on direct commitment to Community Corrections, five years on supervised probation, and five years on unsupervised probation. The trial court sentenced Chism to three years for the class D felony conviction with two years executed and one year suspended. The trial court also ordered that Chism serve the sentences consecutively. After Chism filed a motion to correct erroneous sentence, the trial court modified his suspended sentence to fifteen years on home detention and ten years on information probation. In 2003, Chism filed a second motion to correct erroneous sentence, the trial court denied the motion, and a panel of this court affirmed the trial court's ruling. *See Chism v. State*, 807 N.E.2d 798 (Ind.Ct.App.2004).

In August 2003, West Central Regional Community Corrections ("WCRCC") monitored Chism's home detention. Chism wore an ankle bracelet that emitted a signal that was detected by a monitoring box in his home. The monitoring box was connected to a WCRCC computer through a telephone line. WCRCC repeatedly received false "out of range" reports regarding Chism and installed three different sets of monitoring equipment in Chism's home. After removing and replacing Chism's monitoring equipment for the second time, WCRCC installed the equipment in a different home and it worked properly.

On August 30, 2003, Chism was scheduled to return home by 8:30 p.m. Kristie Valla, a WCRCC employee, received a notice on the computer that Chism had not returned to his home. Valla attempted to call the telephone line connected to the monitoring box but received a busy signal. Valla then called Chism's home telephone and left a message on his answering machine. Valla left approximately five mes-

sages for Chism throughout the night. Valla also contacted the telephone company and was advised that the telephone connected to the monitoring box was "off the hook." Revocation Transcript at 25.

At approximately 9:15 p.m., Valla contacted one of WCRCC's surveillance officers, Jay Busse. When Busse arrived at Chism's residence at 10:18 p.m., no lights were on in the house, and Chism's vehicle was not in the driveway as it usually was. Busse knocked on the door, but no one answered. At 5:25 a.m., Valla received a notice on the computer that Chism had returned to the house at 4:57 a.m. However, Chism was again out of range from 5:13 a.m. until 6:03 a.m.

On September 3, 2003, the State filed a petition to revoke or modify Chism's probation. The State alleged that Chism: (1) had failed to abide by the rules of WCRCC's electronic home monitoring program by being out of range of his monitoring equipment on the night of August 30 and early morning hours of August 31, 2003; and (2) was $799.00 behind in his payments to WCRCC as of September 3, 2003. At a hearing on the petition, Chism denied that he had left his house on the night in question and argued that the monitoring equipment had malfunctioned. Chism testified that he did not pay the monitoring fees because he had filed the second motion to correct erroneous sentence and thought that if the result of the motion was favorable to him, "it would be a fight to get what [he] felt like was [his] money back." *Id.* at 49.

The trial court found "based on the evidence submitted that [Chism] was in violation of his Community Corrections house arrest. By reason of the failure to pay fees which has since been cleared up." *Id.* at 57. The trial court was also not persuaded that the monitoring equipment malfunctioned. Consequently, the trial court found that Chism "was in violation of his community corrections house arrest and probation terms by reason of being away from his residence without prior arrangements and approval from [WCRCC]." *Id.* at 58. At the sentencing hearing, the trial court noted that it seemed "rather useless and . . . counterproductive to continue with the same kind of equipment that has caused problems in the past and arguably at least led to a . . . false finding of violation in this case." Sentencing Transcript at 43. Consequently, the trial court ordered that Chism be monitored with a GPS system.

I.

The first issue is whether the trial court's findings that Chism violated his home detention by being absent from his home without permission and by failing to pay home detention fees are supported by substantial evidence. A probation hearing is civil in nature, and the State need only prove the alleged violations by a preponderance of the evidence. *Cox v. State*, 706 N.E.2d 547, 551 (Ind.1999), *reh'g denied.* We will consider all the evidence most favorable to supporting the judgment of the trial court without reweighing that evidence or judging the credibility of witnesses. *Id.* If there is substantial evidence of probative value to support the trial court's conclusion that a defendant has violated any terms of probation, we will affirm its decision to revoke probation. *Id.* The violation of a single condition of probation is sufficient to revoke probation. *Wilson v. State*, 708 N.E.2d 32, 34 (Ind.Ct. App.1999).

A. *Unauthorized Absence from Residence.*

The trial court found that Chism was in violation of his probation because he was away from his residence without

prior approval from WCRCC. Chism argues that this finding is not supported by substantial evidence. The evidence presented at the probation revocation hearing indicates that Chism was scheduled to return home by 8:30 p.m. on August 30, 2003. Valla received a notice on the computer that Chism had not returned to his home and attempted to call the telephone line connected to the monitoring box but received a busy signal. Valla also left several messages on Chism's home telephone throughout the night. Valla contacted the telephone company and was advised that the telephone connected to the monitoring box was "off the hook." Revocation Transcript at 25. When Busse arrived at Chism's residence at 10:18 p.m., no lights were on in the house, and Chism's vehicle was not in the driveway as it usually was. Busse knocked on the door, but no one answered. At 5:25 a.m., Valla received a notice on the computer that Chism had returned to the house at 4:57 a.m. However, Chism was again out of range from 5:13 a.m. until 6:03 a.m.

Chism testified that he was sick that evening and was in bed asleep when Valla and Busse were trying to contact him. Chism argues that the State failed to present sufficient evidence that the equipment was functioning properly on the night of August 30. Chism points out that WCRCC had repeatedly replaced his monitoring equipment because of false "not in range" reports. Chism also points out that Busse failed to use his portable monitoring equipment, which would have indicated whether Chism was in the residence.

Chism simply requests that we reweigh the evidence and judge the credibility of the witnesses, which we cannot do. The trial court was "not persuaded that . . . the equipment malfunctioned." *Id.* at 57. The State presented evidence that, after removing and replacing Chism's monitor-

ing equipment for the second time, the equipment was installed in a different home and worked properly. Although Chism's monitoring equipment indicated that he was "out of range" while he was in his home "[q]uite a few" times, WCRCC was able to contact Chism by telephone and verify that he was home on the other occasions. *Id.* at 30. Here, despite a home visit and repeated telephone calls, WCRCC was unable to verify that Chism was at home. We conclude that the State presented substantial evidence of probative value to support the trial court's conclusion that Chism violated his probation by being absent from his residence on the night of August 30, 2003 without permission. *See, e.g., Cox,* 706 N.E.2d at 552 (holding that the State presented sufficient evidence to support the trial court's revocation of the defendant's placement at a work release center).

### B. *Failure to Pay Home Detention Fees.*

█ The trial court also found that Chism was in violation of his probation by failing to pay his home detention fees. Ind.Code § 35–38–2–3(f) (Supp.2003) provides that "[p]robation may not be revoked for failure to comply with conditions of a sentence that imposes financial obligations on the person unless the person recklessly, knowingly, or intentionally fails to pay." Chism argues that the State failed to present evidence that he recklessly, knowingly, or intentionally failed to pay the home detention fees.

Chism admitted that he was delinquent in paying the fees. When questioned why he was delinquent, Chism testified that he believed his motion to correct erroneous sentence would "come back in [his] favor," and if he "kept the fees up . . . it would be a fight to get what [he] felt like was [his] money back." Revocation Transcript at 49. As a result of his failure to pay the

fees, Chism lost his "free time." *Id.* Chism admitted that he "could have paid and got [his] free time back." *Id.* Further, Chism admitted that he had income from his work. After his motion to correct erroneous sentence was denied, he paid the fees. Chism admitted that he knowingly or intentionally failed to pay the fees. Consequently, the State presented substantial evidence of probative value to support the trial court's conclusion that Chism knowingly or intentionally failed to pay his home detention fees. *See, e.g., Champlain v. State,* 717 N.E.2d 567, 571 (Ind.1999) (holding that the trial court properly revoked the defendant's probation due to the defendant's "reckless, if not willful" failure to pay restitution).

## II.

The next issue is whether the trial court abused its discretion by modifying the conditions of Chism's probation to allow the use of monitoring by global positioning satellites. In reviewing the validity of probation conditions, we note that trial courts possess discretionary power to determine a sentence "within statutorily prescribed parameters." *Strowmatt v. State,* 779 N.E.2d 971, 976 (Ind.Ct.App. 2002). A trial court's sentencing power includes the statutory discretion to order probation and set out its terms. *Id.* Trial courts are accorded broad discretion in establishing conditions of probation. *Id.* Probation is a matter of grace and a conditional liberty that is a favor, not a right. *Id.* Ultimately, the decision whether to grant probation and to determine the conditions of probation are matters within the

sound discretion of the trial court. *Id.* Therefore, we review a trial court's sentencing decision in probation revocation proceedings for an abuse of discretion. *Goonen v. State,* 705 N.E.2d 209, 212 (Ind. Ct.App.1999). An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances. *Smith v. State,* 730 N.E.2d 705, 708 (Ind.2000), *reh'g denied.*

The trial court here modified Chism's probation and ordered him to be monitored by a GPS system. Testimony at the dispositional hearing indicated that the GPS system would allow WCRCC to "follow [Chism] basically day and night and it works as a regular monitor in the evening but it would give [WCRCC] an idea of his location where he was throughout the day." Sentencing Transcript at 7. Chism argues that the trial court exceeded its statutory authority in ordering GPS monitoring.[1]

This issue requires us to interpret the home detention statutes, Ind.Code §§ 35–38–2.5–1 to –13. When interpreting a statute, we independently review a statute's meaning and apply it to the facts of the case under review. *Bolin v. Wingert,* 764 N.E.2d 201, 204 (Ind.2002). Thus, we need not defer to a trial court's interpretation of the statute's meaning. *Elmer Buchta Trucking, Inc. v. Stanley,* 744 N.E.2d 939, 942 (Ind.2001). "The first step in interpreting any Indiana statute is to determine whether the legislature has spoken clearly and unambiguously on the point in question." *St. Vincent Hosp. & Health Care Center, Inc. v. Steele,* 766

---

1. The State argues that Chism invited the error when his defense counsel requested that Chism be placed on GPS monitoring and that Chism waived appellate review of the trial court's authority to place him on GPS monitoring by failing to object to it at the sentencing hearing. However, Chism objected to the GPS monitoring during his testimony because he did not believe it was permitted under the statute. We conclude that Chism did not invite the error or waive appellate review of the error, and we will address the issue on its merits.

N.E.2d 699, 703–704 (Ind.2002). If a statute is unambiguous, we must give the statute its clear and plain meaning. *Bolin,* 764 N.E.2d at 204. A statute is unambiguous if it is not susceptible to more than one interpretation. *Elmer Buchta Trucking,* 744 N.E.2d at 942. However, if a statute is susceptible to multiple interpretations, we must try to ascertain the legislature's intent and interpret the statute so as to effectuate that intent. *Bolin,* 764 N.E.2d at 204. We presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results. *Id.*

 The home detention statutes, Ind. Code §§ 35–38–2.5–1 to –13, set out two levels of home detention—a level for "offenders" and a level for "violent offenders." The term "offender" means: "(1) a criminal offender, which is a person of any age who is convicted of a crime; or (2) a delinquent offender, which is a person who is adjudged delinquent by a juvenile court." Ind.Code § 35–38–2.5–4 (1998) (referencing Ind.Code § 11–8–1–9 (1998)). Chism qualifies as an offender because he was convicted of conspiracy to deliver cocaine and operating a vehicle while intoxicated.

Ind.Code § 35–38–2.5–6(6) (Supp.2003) provides that an order for home detention of an offender as a condition of probation must include "[a] requirement that the offender maintain: (A) a working telephone in the offender's home; and (B) if ordered by the court, a monitoring device in the offender's home or on the offender's person, or both." A "monitoring device" is defined as an electronic device that:

(1) is limited in capability to the recording or transmitting of information regarding an offender's presence or absence from the offender's home;

(2) is minimally intrusive upon the privacy of the offender or other persons residing in the offender's home; and

(3) with the written consent of the offender and with the written consent of other persons residing in the home at the time an order for home detention is entered, may record or transmit:
 (A) visual images;
 (B) oral or wire communication or any auditory sound; or
 (C) information regarding the offender's activities while inside the offender's home.

Ind.Code § 35–38–2.5–3 (1998).

Here, the GPS system is not limited in capability to the recording or transmitting of information regarding Chism's presence or absence from his home. Rather, the GPS system is capable of transmitting information regarding Chism's location even when he is away from his residence. *See* Ind.Code § 35–38–2.5–6(1) (discussing the requirement that the offender be confined to his home except when working at approved employment, seeking employment, undergoing medical or other treatment, attending educational institutions, attending religious services, or participating in a work release, restitution or service program approved by the court). Because the GPS system is not limited in capability to recording or transmitting information regarding Chism's presence or absence from home, the GPS system does not qualify as a "monitoring device," and the trial court did not have statutory authority to order an "offender" to be monitored by the GPS system.

The State also argues that the trial court was permitted to order the GPS monitoring because Chism qualifies as a "violent offender." Ind.Code § 35–38–2.5–12(b) (Supp.2003) provides that "[a] probation department or community corrections program charged by a court with supervi-

sion of a violent offender placed on home detention under this chapter shall maintain constant supervision of the violent offender using a monitoring device and surveillance equipment." Ind.Code § 35–38–2.5–2.3 (Supp.2003) defines "constant supervision" as "monitoring a violent offender twenty-four (24) hours each day by means described in section 12(b) of this chapter." A "violent offender" is defined as a person who is:

(1) convicted of an offense or attempted offense, except for an offense under IC 35–50–1–2(a) [crimes of violence, such as murder, kidnapping, various sex crimes, and robbery], IC 35–42–2–1 [battery], IC 35–42–2–1.3 [domestic battery], IC 35–43–1–1 [arson], IC 35–44–3–5 [escape], IC 35–45–10–5 [stalking], IC 35–47–5–1 (repealed) [explosives], or IC 35–47.5–5 [explosives];

(2) charged with an offense or attempted offense listed in IC 35–50–1–2(a) [crimes of violence, such as murder, kidnapping, various sex crimes, and robbery], IC 35–42–2–1 [battery], IC 35–42–2–1.3 [domestic battery], IC 35–42–4 [sex crimes], IC 35–43–1–1 [arson], IC 35–44–3–5 [escape], IC 35–45–10–5 [stalking], IC 35–46–1–3 [incest], IC 35–47–5–1 (repealed) [explosives], or IC 35–47.5–5 [explosives]; or

(3) a security risk as determined under section 10 of this chapter.

Ind.Code § 35–38–2.5–4.7 (Supp.2003).

The State argues that Chism, who was convicted of conspiracy to deliver cocaine and operating a vehicle while intoxicated, qualifies as a violent offender because he was "convicted of an offense or attempted offense, *except for* an offense under IC 35–50–1–2(a) [crimes of violence, such as murder, kidnapping, various sex crimes, and robbery], IC 35–42–2–1 [battery], IC 35–

42–2–1.3 [domestic battery], IC 35–43–1–1 [arson], IC 35–44–3–5 [escape], IC 35–45–10–5 [stalking], IC 35–47–5–1 (repealed) [explosives], or IC 35–47.5–5 [explosives]." I.C. § 35–38–2.5–4.7(a) (emphasis added). A literal reading of the statute indicates that the State is correct. However, we question why the statute would define a violent offender as a person convicted of an offense other than various violent offenses, such as murder, kidnapping, rape, or stalking. Under the State's interpretation of the statute, a person convicted of murder would not be a violent offender, but a person convicted of check deception would be a violent offender.

We also note that although subsection (a) uses the "except for" language, subsection (b) provides that a violent offender is a person "charged with an offense or attempted offense *listed in* IC 35–50–1–2(a) [crimes of violence, such as murder, kidnapping, various sex crimes, and robbery], IC 35–42–2–1 [battery], IC 35–42–2–1.3 [domestic battery], IC 35–42–4 [sex crimes], IC 35–43–1–1 [arson], IC 35–44–3–5 [escape], IC 35–45–10–5 [stalking], IC 35–46–1–3 [incest], IC 35–47–5–1 (repealed) [explosives], or IC 35–47.5–5 [explosives]." I.C. § 35–38–2.5–4.7(b) (emphasis added). Common sense tells us that the legislature could not have intended to describe a "violent offender" as both a person *convicted* of a nonviolent offense and a person *charged* with a violent offense.

■■■ Although the language employed in a statute "may be technically free from uncertainty or ambiguity, in construing the acts of the legislature courts may provide minor omissions or make minor substitutions in the enactments of the legislature where (1) such action is necessary in order to give vitality to or prevent absolute absurdity in the acts of the legislature; (2) an omission has occurred or a correction is

necessary because of a clerical or typographical error; (3) the legislation, as enacted, was obviously not within the comprehension of the legislative body, and (4) the legislative intention, with respect to the enactment, is clear." *Woerner v. City of Indianapolis*, 242 Ind. 253, 263–264, 177 N.E.2d 34, 38 (1961), *cert. denied*, 368 U.S. 989, 82 S.Ct. 605, 7 L.Ed.2d 526 (1962). A literal interpretation of subsection (a) would result in an absurdity. Consequently, we conclude that the legislature intended to include persons convicted of the offenses listed in subsection (a) rather than exclude such persons. Thus, we interpret the Ind.Code § 35–38–2.5–4.7(a) to mean a person convicted of an offense or attempted offense listed in "IC 35–50–1–2(a), IC 35–42–2–1, IC 35–42–2–1.3, IC 35–43–1–1, IC 35–44–3–5, IC 35–45–10–5, IC 35–47–5–1 (repealed), or IC 35–47.5–5." Chism was not convicted of an offense listed in subsection (a), charged with an offense listed in subsection (b), or considered a security risk under subsection (c). Consequently, Chism was not a violent offender and was not eligible for constant monitoring.

We recognize that the trial court may modify a probationer's conditions of probation as a result of violations. *See* Ind.Code § 35–38–2–3(g). However, because the trial court did not have the statutory authority to order an "offender" to be monitored by the GPS system and because Chism did not qualify as a "violent offender," the trial court abused its discretion by modifying Chism's conditions of probation to include monitoring by the GPS system.

For the foregoing reasons, we affirm the trial court's findings that Chism violated his probation, reverse the trial court's modification of Chism's probation to include monitoring by the GPS system, and remand for resentencing on Chism's probation violations.[2]

Affirmed in part, reversed in part, and remanded.

DARDEN, J., and ROBB, J., concur.

---

2. On remand, the trial court may consider monitoring Chism's home detention with a monitoring device described in Ind.Code § 35–38–2.5–3(3) that "may record or transmit: (A) visual images; (B) oral or wire communication or any auditory sound; or (C) information regarding the offender's activities while inside the offender's home." Although this type of device requires the offender's consent and the consent of others living in the home, as the State points out Chism "could soon be facing a choice between consenting to such measures or being imprisoned...." Appellee's Brief at 16, n. 4.