905 N.E.2d 1026 (2009)
METRO HEALTH PROFESSIONALS, INC., Appellant-Plaintiff,
v.
CHRYSLER, LLC, Appellee-Defendant.
No. 06A04-0809-CV-547.
Court of Appeals of Indiana.
May 5, 2009.
*1028 Robert E. Duff, Lebanon, IN, Attorney for Appellant.
Jeffrey P. Smith, Hawk Haynie Kammeyer & Chickedantz, Fort Wayne, IN, Attorney for Appellee.

OPINION
BROWN, Judge.
Metro Health Professionals, Inc. ("MHP"), appeals the trial court's grant of summary judgment to Chrysler, LLC. MHP raises one issue, which we revise and restate as whether the trial court erred by granting Chrysler's motion for summary judgment and denying MHP's motion for summary judgment. We reverse.
The relevant facts as designated by the parties follow. On October 10, 2006, Brent A. Losier, the president of MHP, purchased a Jeep from an authorized Chrysler dealership. On November 30, 2006, Losier took the Jeep to a repair facility authorized by Chrysler complaining that, while he had been operating the Jeep one night, "all the warning lights in the dash came on, the vehicle's gauges ceased to function and the headlights spontaneously shut off." Appellant's Appendix at 24. Without making any repairs, Chrysler returned the vehicle to Losier on December 4, 2006.
On April 4, 2007, Losier took the Jeep to a repair facility authorized by Chrysler complaining that, while he had been operating the vehicle, "all the warning lights in the dash came on, the vehicle's gauges ceased to function and the transmission spontaneously shifted into low gear." Id. Without making any repairs, Chrysler returned the vehicle to Losier on April 5, 2007.
On June 6, 2007, Losier took the Jeep to a repair facility authorized by Chrysler complaining that, while he had been operating the vehicle, "all the warning lights in the dash came on, the vehicle's gauges (except for the fuel gauge) ceased to function, the gear indicator indicated the vehicle was in drive while it was in park, the headlights spontaneously shut off (and then spontaneously came back on), and the transmission spontaneously shifted into low gear." Id. at 25. Without making any repairs, Chrysler returned the vehicle to Losier on June 13, 2008.
*1029 On July 12, 2007, Losier took the Jeep to a repair facility authorized by Chrysler complaining that, while he had been operating the vehicle, "all the warning lights in the dash came on, the vehicle's gauges ceased to function, and the driver's seat spontaneously moved forward." Id. A technician "inspected all of the wiring and checked the connectors ... and couldn't find anything wrong." Id. at 229. Chrysler did not make any repairs to the vehicle. On July 18, 2007, MHP wrote a letter to Chrysler "advising [Chrysler] of a claim under the Indiana Motor Vehicle Protection Act." Id. at 25. MHP thus asserted its rights under Indiana's Lemon Law following the fourth unsuccessful repair attempt and prior to taking the vehicle in for yet another repair attempt.
On September 7, 2007, Losier was again driving the Jeep when "all the warning lights in the dash came on and the vehicle's gauges ceased to function." Id. at 229. Losier took the Jeep to a repair facility authorized by Chrysler while the vehicle was still malfunctioning, and the technicians made repairs to it. Specifically, the technicians "replaced the front control module." Id.
On October 29, 2007, MHP filed a complaint against Chrysler seeking relief under the Indiana Motor Vehicle Protection Act and the Magnuson-Moss Warranty Act. Chrysler filed its answer and affirmative defenses on January 9, 2008. On March 26, 2008, Chrysler's technical advisor inspected the Jeep and found no defect or nonconformity in the vehicle. As of April 28, 2008, the nonconformity had not recurred. In June 2008, the parties filed cross motions for summary judgment. At a hearing on the motions, MHP agreed to dismiss its claims under the Magnuson-Moss Warranty Act. After the hearing, the trial court denied MHP's motion for summary judgment with respect to MHP's remaining claim under the Indiana Motor Vehicle Protection Act and granted summary judgment to Chrysler, finding that the "designated facts reveal that the nonconformity has not recurred since September 7, 2007," and that MHP was therefore without remedy under the Act. Id. at 10. MHP filed a motion to correct errors, which the trial court denied.
The issue is whether the trial court erred by granting Chrysler's motion for summary judgment and denying MHP's motion for summary judgment. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(c); Mangold ex rel. Mangold v. Ind. Dep't of Natural Res., 756 N.E.2d 970, 973 (Ind. 2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. Mangold, 756 N.E.2d at 973. Our review of a summary judgment motion is limited to those materials designated to the trial court. Id. We must carefully review a decision on summary judgment to ensure that a party was not improperly denied its day in court. Id. at 974.
The fact that the parties made cross motions for summary judgment does not alter our standard of review. Hartford Acc. & Indem. Co. v. Dana Corp., 690 N.E.2d 285, 291 (Ind.Ct.App.1997), trans. denied. Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. Id. Where a trial court enters findings of fact and conclusions thereon in granting a motion for summary judgment, as the trial court did in this case, the entry of specific findings and conclusions does not alter the nature of our review. Rice v. Strunk, 670 N.E.2d 1280, 1283 (Ind.1996). In the summary judgment context, we are not bound by the *1030 trial court's specific findings of fact and conclusions thereon. Id. They merely aid our review by providing us with a statement of reasons for the trial court's actions. Id.
This case requires that we interpret the Indiana Motor Vehicle Protection Act. When interpreting a statute, we independently review a statute's meaning and apply it to the facts of the case under review. Bolin v. Wingert, 764 N.E.2d 201, 204 (Ind.2002). Thus, we need not defer to a trial court's interpretation of the statute's meaning. Elmer Buchta Trucking. Inc. v. Stanley, 744 N.E.2d 939, 942 (Ind. 2001). "The first step in interpreting any Indiana statute is to determine whether the legislature has spoken clearly and unambiguously on the point in question." St. Vincent Hosp. & Health Care Ctr., Inc. v. Steele, 766 N.E.2d 699, 703-704 (Ind.2002). If a statute is unambiguous, we must give the statute its clear and plain meaning. Bolin, 764 N.E.2d at 204. A statute is unambiguous if it is not susceptible to more than one interpretation. Elmer Buchta Trucking, 744 N.E.2d at 942. However, if a statute is susceptible to multiple interpretations, we must try to ascertain the legislature's intent and interpret the statute so as to effectuate that intent. Bolin, 764 N.E.2d at 204. We presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results. Id.
The Indiana Motor Vehicle Protection Act, commonly known as the Lemon Law, is found at Ind.Code §§ 24-5-13-1 to -24. Lemon Laws have been enacted across the country in response to the problem "that once the buyer has bought a lemon, the dealer or manufacturer, for any number of reasons, is either unwilling or unable to take all steps necessary toward giving the buyer what the dealer and the manufacturer promised: a defect free, safe and reliable automobile reasonably worth its purchase price." Harold Greenberg, The Indiana Motor Vehicle Protection Act of 1988: The Real Thing for Sweetening the Lemon or Merely a Weak Artificial Sweetener?, 22 IND. L. REV. 57, 58 (1989).
Ind.Code § 24-5-13-8 provides:
If a motor vehicle suffers from a nonconformity and the buyer reports the nonconformity within the term of protection to the manufacturer of the vehicle, its agent, or its authorized dealer then the manufacturer of the motor vehicle or the manufacturer's agent or authorized dealer shall make the repairs that are necessary to correct the nonconformity, even if the repairs are made after expiration of the term of protection.
"Nonconformity" means "any specific or generic defect or condition or any concurrent combination of defects or conditions that: (1) substantially impairs the use, market value, or safety of a motor vehicle; or (2) renders the motor vehicle nonconforming to the terms of an applicable manufacturer's warranty." Ind.Code § 24-5-13-6. "Term of protection" means a period of time that:
(1) begins:
(A) on the date of original delivery of a motor vehicle to a buyer; or
(B) in the case of a replacement vehicle provided by a manufacturer to a buyer under this chapter, on the date of delivery of the replacement vehicle to the buyer; and
(2) ends the earlier of:
(A) eighteen (18) months after the date identified under subdivision (1); or
(B) the time the motor vehicle has been driven eighteen thousand (18,000) miles after the date identified under subdivision (1).
Ind.Code § 24-5-13-7.
Ind.Code § 24-5-13-10 provides:

*1031 If, after a reasonable number of attempts, the manufacturer, its agent, or authorized dealer is unable to correct the nonconformity, the manufacturer shall accept the return of the vehicle from the buyer and, at the buyer's option, either, within thirty (30) days, refund the amount paid by the buyer or provide a replacement vehicle of comparable value.
Ind.Code § 24-5-13-15(a)(l) provides that "[a] reasonable number of attempts is considered to have been undertaken to correct a nonconformity if: ... the nonconformity has been subject to repair at least four (4) times by the manufacturer or its agents or authorized dealers, but the nonconformity continues to exist."[1] An action brought under the Indiana Lemon Law must be commenced within two years following the date the buyer first reports the nonconformity to the manufacturer, its agent, or authorized dealer. Ind.Code § 24-5-13-23(a).
MHP argues that the nonconformity in this case was subject to repair four times but continued to exist. MHP argues that the trial court therefore erred when it concluded that the Lemon Law required "that the nonconformity continue to exist after each additional repair attempt that follows a reasonable number of repair attempts" under Ind.Code § 24-5-13-15(a). Appellant's Brief at 9. Chrysler, on the other hand, argues that the grant of summary judgment in its favor is proper because MHP failed to show that the nonconformity continued to exist after its fifth attempt at having the vehicle repaired. Indiana courts have not yet addressed this issue.
MHP cites DaimlerChrysler Corp. v. Spitzer, 7 N.Y.3d 653, 827 N.Y.S.2d 88, 860 N.E.2d 705 (N.Y.2006), in support of its argument. In Spitzer, James Warner bought a new truck manufactured by General Motors Corporation in March 2003. Shortly after acquiring the truck, Warner discovered a transmission problem and attempted to have the problem fixed on five occasions between April and November 2003. In December 2003, Warner filed a request for arbitration under New York's Lemon Law.[2] After a hearing, finding that there had been four or more attempts to repair the same defect and that the problem persisted following the fourth attempt, the arbitrator awarded Warner a refund. General Motors appealed the award, arguing that Warner could not prevail under New York's "repair presumption"[3] unless he demonstrated that the vehicle remained *1032 defective at the time of the commencement of the arbitration hearing. The trial court granted a new hearing to determine whether the problem had in fact been remedied prior to the hearing. The Appellate Division reversed and reinstated the arbitration award.
In affirming the Appellate Division, the Court of Appeals of New York reasoned:
We do not read the repair presumption as requiring a consumer to establish that the vehicle defect continued to exist until the trial or hearing date. Rather, the plain language of the provision obligates a consumer to demonstrate that the vehicle was subject to repair at least four times and that the same defective condition remained unresolved after the fourth attempt. Therefore, once a consumer has met the four-repair threshold, the presumption arises regardless of whether the manufacturer later remedies the problem. After four attempts, it is presumed that the manufacturer has been given a reasonable number of opportunities to fix the vehicle. The determination of whether a reasonable number of attempts took place for a consumer to recover does not turn on whether the car was ultimately repaired. If the Legislature intended to condition recovery on such a requirement, it easily could have said so.
Contrary to the manufacturers' argument, our interpretation gives meaning to all of the statutory language in the context of the statute as a whole. The requirement that the defect "continues to exist" is simply another way of saying that the fourth repair attempt was unsuccessful. Without that language, a consumer could meet the presumption even if the defect was repaired on the fourth visit. The phrase "or more" clarifies that consumers may opt to bring their vehicles for repair more than four times yet still retain eligibility for Lemon Law relief. The Legislature likely included the phrase "or more" in the days-out-of-service presumption for the same reason. In short, it is clear that the Legislature intended to create [a] bright-line presumption[] by which a consumer can demonstrate that the manufacturer was accorded a reasonable number of attempts to alleviate the problem....
Id. at 709-710 (emphasis added).
In response to MHP's reliance on Spitzer, Chrysler cites Computer Network, Inc. v. AM Gen. Corp., 265 Mich.App. 309, 696 N.W.2d 49, 62 (2005), where the Michigan Court of Appeals held that "there must be a showing that a reported condition under [the Michigan Lemon Law, MICH. COMP. LAWS §§ 257.1401-1410] continues to exist before a remedy may be obtained." In that case, the driver of the vehicle in question "testified that he could not recall any continuing problems other than wind noise at the end of the lease" of the vehicle. Id. The court held that "wind noise" did not impair the use or value of the vehicle and that, as other defects the driver had complained of appeared to have been resolved, "there were no defects under [the Michigan Lemon Law] that continued to exist." Id. Accordingly, the court affirmed the trial court's dismissal of the plaintiffs Lemon Law claim.
We find the reasoning of the Court of Appeals of New York in Spitzer to be persuasive. We hold that the plain language *1033 of Ind.Code § 24-5-13-15(a)(1) obligates a consumer to demonstrate that the vehicle was subject to repair at least four times and that the same defective condition remained unresolved after the fourth attempt. Therefore, once a consumer has met the four-repair threshold and the defect remains unresolved, the requirements of Ind.Code § 24-5-13-15(a)(1) have been met. The requirement that the defect "continues to exist" is another way of saying that the fourth repair attempt was unsuccessful. We therefore adopt the reasoning in Spitzer insofar as it resolves the case before us, where a claim is made shortly after the fourth repair attempt.
In so holding, we are mindful that
"[T]he average consumer, who is typically obligated to make monthly car payments and rely on the car for employment, should not be forced to continue to drive a defective new vehicle until the date of adjudication simply to preserve his or her rights under the [] Lemon Law. Nor does the average consumer have the luxury of simply casting a new, albeit defective, vehicle aside while awaiting disposition of a [] Lemon Law action or proceeding."
Spitzer, 827 N.Y.S.2d 88, 860 N.E.2d at 710. Thus, to the extent that Computer Network conflicts with the holding in Spitzer, we decline to follow it.[4]
In the present case, under Ind.Code § 24-5-13-15(a)(l), MHP had to show that the nonconformity in the Jeep had been subject to repair at least four times and that the nonconformity nevertheless continued to exist. The designated evidence reveals that Losier took the Jeep to an authorized repair facility on five occasions. On the first three occasions, Chrysler returned the Jeep to Losier without making any repairs. On the fourth occasion, Chrysler performed a diagnostic test but made no repairs, and the Jeep again malfunctioned. Although Chrysler argues that the Jeep was not "subject to repair" four times because it made no repairs the first four times MHP returned the Jeep, we do not find this argument persuasive. Chrysler may not avoid liability under the Lemon Law by simply doing nothing when faced with a customer's complaints.[5]See Ind.Code § 24-5-13-8 (providing that, where a vehicle suffers from a nonconformity and the buyer reports the nonconformity *1034 to the dealer, the "dealer shall make the repairs that are necessary to correct the nonconformity" (emphasis added)). After the Jeep malfunctioned for the fourth time, MHP gave Chrysler written notification of its Lemon Law claim.
Chrysler was unable to correct the nonconformity after the Jeep was subject to repair a reasonable number of times. Therefore, Chrysler was obligated at the MHP's option, either, within thirty days, to refund the amount paid by MHP or provide a replacement vehicle of comparable value. Ind.Code § 24-5-13-10. Accordingly, we hold that the trial court erred when it granted summary judgment to Chrysler.
Chrysler also argues that summary judgment should not be granted to MHP because "a jury may conclude that the four tenders and one repair constituted a reasonable number of attempts to correct the nonconformity." Appellee's Brief at 18. We must reject this argument. Under Ind.Code § 24-5-13-15(a), a reasonable number of attempts to correct a nonconformity is considered to have been undertaken if the nonconformity has been subject to repair as least four times but continues to exist. The requirement that the nonconformity continue to exist is simply another way of saying that the fourth repair attempt was unsuccessful. Spitzer, 827 N.Y.S.2d 88, 860 N.E.2d at 710. Thus, whether there has been a reasonable number of attempts to correct a nonconformity in a given case is established by statute and subject to judicial interpretation, not a question of fact to be resolved by a jury. We therefore hold that, as there are no genuine issues of material fact, MHP is entitled to summary judgment as a matter of law.[6]
For the foregoing reasons, we reverse the trial court's grant of the motion for summary judgment filed by Chrysler and the trial court's denial of MHP's motion for summary judgment and enter summary judgment in favor of MHP.
Reversed.
CRONE, J. and BRADFORD, J. concur.
NOTES
[1] In addition to Ind.Code § 24-5-13-15(a)(1), Ind.Code § 24-5-13-15(a)(2) provides that "[a] reasonable number of attempts is considered to have been undertaken to correct a nonconformity if: ... the vehicle is out of service by reason of repair of any nonconformity for a cumulative total of at least thirty (30) business days, and the nonconformity continues to exist." Ind.Code § 24-5-13-15(a)(2) is not at issue in the present case.
[2] N.Y. GENERAL BUSINESS LAW § 198-a (McKinney 2005).
[3] New York's "repair presumption," provides:

It shall be presumed that a reasonable number of attempts have been undertaken to conform a motor vehicle to the applicable express warranties, if:
[] the same nonconformity, defect or condition has been subject to repair four or more times by the manufacturer or its agents or authorized dealers within the first eighteen thousand miles of operation or during the period of two years following the date of original delivery of the motor vehicle to a consumer, whichever is the earlier date, but such nonconformity, defect or condition continues to exist....
N.Y. GENERAL BUSINESS LAW § 198-a(d)(l). We note that, like New York, several other state laws also establish a repair presumption. See, e.g., MD.CODE ANN., COM. LAW § 14-1502(d) (establishing the conditions under which "[i]t shall be presumed that a reasonable number of attempts have been undertaken"); MICH. COMP. LAWS § 257.1403(5) (establishing the conditions under which "[i]t shall be presumed that a reasonable number of repair attempts have been undertaken"). Ind.Code § 24-5-13-15(a)(1), which is otherwise similar to these provisions, does not establish a presumption but, rather, recites the conditions under which "[a] reasonable number of attempts is considered to have been undertaken to correct a nonconformity." (emphasis added).
[4] Chrysler also relies on Zitterbart v. Am. Suzuki Motor Corp., 182 Md.App. 495, 958 A.2d 372, 383 (Md.Ct.Spec.App.2007), which held that "it matters not whether a reasonable number of attempts to repair were made" where the plaintiff had submitted "no admissible evidence of the same uncorrectable defect, condition, or nonconformity" in the vehicle in question. The plaintiff's evidence in Zitterbart was deemed inadmissible in part because the plaintiff's affiant

is a layperson with no expertise in motor vehicle mechanics. The existence of a defect, condition, or non-conformity in [the vehicle in question] is a matter within the specialized knowledge of experts in the field of motor vehicle mechanics, and is not something [the affiant] is qualified to offer an opinion about.
Id. at 382. However, the Indiana Supreme Court has clarified that "[t]here is nothing in the `Lemon Law' statute which requires the purchaser of the automobile to present expert testimony as to the failure of the automobile to perform properly." Gen. Motors Corp. v. Zirkel, 613 N.E.2d 30, 31 (Ind.1993), clarified on reh'g, 617 N.E.2d 921 (Ind.1993). Accordingly, we do not find Zitterbart instructive. Moreover, to the extent that Zitterbart conflicts with the holding in Spitzer, we decline to follow it. See Zitterbart, 958 A.2d at 382 n. 5 (suggesting that the holding in Spitzer overlooks "the plain language of the word `continues'" as used in Maryland's Lemon Law).
[5] Chrysler claims that, "[d]uring the first four visits, the dealer performed diagnostic tests and examined the Jeep, but was unable to duplicate the problem or identify its cause." Appellee's Brief at 10. Chrysler further argues that "the Jeep, having only been examined during the first four visits to the dealer, was not subject to at least four repair attempts." Id. at 13. Chrysler does not cite to the record in support of these propositions. The designated evidence reveals only that Chrysler performed a "scan" on the third visit and a diagnostic test on the fourth visit. Appellant's Appendix at 229. The parties have designated no evidence indicating that diagnostic tests were performed during all four visits, and Chrysler appears to have returned the vehicle to MHP after the first two visits without doing anything at all.
[6] We recognize that there may be fact situations in which a consumer waits a considerable amount of time after his claim accrues prior to making a demand under Indiana's Lemon Law, and that certain affirmative defenses may come into play to defeat the consumer's course of action. See Ind.Code § 24-5-13-18 (providing affirmative defenses to a Lemon Law claim). However, no such circumstance exists in the case before us.